WILLIAM BUTLER, Treasurer of the State of Illinois, Appellant, *v.* JESSE K. DUBOIS, Auditor of the State of Illinois, Appellee.

### APPEAL FROM SANGAMON.

Although bonds of the State have got into circulation improperly, yet if the legislature recognizes their legality upon condition that certain securities shall be given, and directs that they may be sold in open market; the State cannot afterwards repudiate them.

The condition in the law of 1859, to indemnify the State against loss by reason of unlawful funding of canal indebtedness, which authorized a demand for further security; if the demand was not complied with, made the whole debt due and payable at once.

THIS case was submitted to the Sangamon Circuit Court, upon the following statement of facts:

It is agreed by the parties in this cause, that the State Bank has been duly put in liquidation by an order of the Circuit Court for Sangamon county, for the failure of said bank and the owners thereof, to furnish additional security for the payment of the circulating notes of said bank on account of

8

the depreciation of the securities of said bank, as the said bank was required to do by the bank commissioners of the State of Illinois, and that notice was duly given of an application for an order on the treasurer to deliver to the auditor the securities deposited with the treasurer by said bank as security for its circulating notes, and that on application to the court it was found that all the securities filed by said bank were insufficient to pay and redeem its circulating notes, and that thereupon said order was granted by the court for the delivery of all the securities deposited by said bank, subject to the right of the treasurer to set up a claim that certain bonds, being part of the securities deposited by said bank, to wit, ninety-three bonds, commonly called Illinois and Michigan canal bonds, were really in truth the property of the State of Illinois, and that he has a right to hold them as the property of the State.

And the parties further agree, that said ninety-three bonds so deposited by said bank as security for the redemption of its circulating notes, are the same bonds specified and described in a certain act of the General Assembly of the State of Illinois, entitled " An Act to indemnify the State of Illinois against loss by reason of unlawful funding of canal indebtedness," approved February 19, 1859, as being numbered from 900 to 992, of Illinois and Michigan canal bonds, which bonds were issued and delivered to Joel A. Matteson, on canal scrip illegally funded ; and it is agreed that said act shall be considered as part of this agreement.

And it is further agreed and admitted, that within sixty days after the passage of said act, there was furnished by said Joel A. Matteson to the governor, auditor and treasurer of the State of Illinois, for the use of the people of the State of Illinois, security satisfactory to the said governor, auditor and treasurer of the State of Illinois, to indemnify and save harmless the State of Illinois from all liability on account of said bonds, and also on bonds of said State numbered 886 to 898 inclusive, and three hundred dollars in bond 899, the same being bonds designated as Illinois and Michigan canal bonds then outstanding, or for moneys that may be paid by the

State thereon, and from all liability upon any certificate, interest bonds or other evidence of indebtedness that might have been issued on account of any of the bonds aforesaid, or the canal checks or scrip for which said bonds were issued, and any coupons then or thereto attached to said bonds or any of them, and from all costs, expenses and damages that might accrue against said State by reason of the said bonds, certificates, interest bonds, coupons or other evidences of indebtedness, and also for the repayment to the State of Illinois within five years from the passage of said act, of any money that might heretofore have been paid by the State on account of any of said bonds, certificates, interest bonds, coupons or other evidences of indebtedness, or for any interest on the canal checks or scrip upon which said bonds were issued; or in the purchase by the State of any of said bonds, certificates, interest bonds, coupons, or other indebtedness arising out of the funding of said canal checks or scrip upon which said bonds were issued, together with six per cent. per annum interest on each and every sum of money paid by the State upon such bonds, certificates, interest bonds, coupons or other evidences of indebtedness, or for said interest, or on the purchase of any of said bonds, certificates, interest bonds, or other evidences of indebtedness, to be computed from the time when any such sum or sums of money shall have been paid. And it is further admitted and agreed, that said security furnished by said Joel A. Matteson, as aforesaid, consisted of a bond executed by said Joel A. Matteson, together with three sureties, conditioned as required by said act, and also of several mortgage deeds executed by said Joel A. Matteson and wife, conveying to the people of the State of Illinois, a large amount of real estate, with condition to indemnify and save harmless the people of the State of Illinois, according to the requirements of the aforesaid act of the General Assembly, which said bond and mortgage were accepted and approved by the governor, auditor and treasurer of the State of Illinois, who caused all of said mortgages to be duly recorded, and thereupon said bonds mentioned in said law were suffered to remain in the treasurer's hands, as security for the circulation of said

State Bank of Illinois, and said bank, in conformity with the provisions of the second section of said act, was never required by the bank commissioners to furnish any other or additional security for the protection of the circulation or payment of the liabilities of said bank, of any deficiency arising from the alleged invalidity of said bonds.

And it is further admitted, that since said bond and mortgages aforesaid were executed, and accepted, and approved, as aforesaid, the sureties to said bond have become much less sufficient than they were believed to be at the time the bond was received, and the property embraced in said mortgages has greatly depreciated.

And it is further admitted and agreed, that the governor, auditor and treasurer of said State, believing that the security so given as aforesaid, had depreciated and become inadequate, on the —— day of ——, A. D. 1861, and before proceedings had been commenced to put said bank into liquidation, notified and required said Joel A. Matteson to give additional security, which the said Matteson has failed and neglected to do.

And the said auditor and treasurer now submit to this court to determine whether said bonds, described in said act, and deposited as security for the circulation of said bank, ought to be used and appropriated to pay the circulating notes of said bank, or whether the treasurer has the right to hold and retain the same as the property of the State, leaving the circulating notes of said bank unredeemed.

If the court determines that said bonds ought to be applied to the redemption of the circulating notes of said bank (there being no other assets out of which they can be redeemed), then the court is to grant a peremptory order or mandamus to the treasurer, to deliver said bonds to the auditor.

And it is further agreed, that either party may appeal from the decision of the Circuit Court, to the Supreme Court, sitting at either of the Grand Divisions of this State, by merely filing a copy of this agreed case, and the order or judgment of the court thereon—the parties agreeing that the previous proceedings against said bank, on the application of the audi-

tor for an order on the treasurer for the bonds deposited as security for the circulating notes of said bank, need not be copied in the record, as they are not necessary to the decision of the point now submitted.

And it is agreed, that including the bonds hereinbefore described, all the securities deposited with the treasurer are insufficient to pay the circulating notes of said bank.

Upon which agreed statement, the Circuit Court pronounced the following judgment:

This court does peremptorily order, that the said William Butler, treasurer of the State of Illinois, do forthwith deliver to the said Jesse K. Dubois, auditor of public accounts, the said ninety-three bonds, in said agreed case described, etc., deposited with the treasurer by the said State Bank of Illinois, as security for the circulating notes of said bank, to be sold by the said auditor for the redemption of the circulating notes of said bank, and by agreement of the parties, an appeal is granted to said William Butler, from this order, to the Supreme Court of the State of Illinois, sitting in the Third Grand Division, at Ottawa.

HAY & CULLOM, for the Treasurer.

The appellant, under the assignment of error herein, submits, for the determination of the court, the questions: Whether said act of the legislature, referred to in said agreement, contemplated that said bonds, under any circumstances, should again be put into circulation, and the State made liable thereon; whether, admitting that said act so contemplated, was it or not the true intent and meaning of said act, that said bonds should be retained by the State in the hands of the treasurer, until full and adequate security was given by Matteson for the indemnification of the State; and whether, notwithstanding security at first deemed sufficient and satisfactory had been given, yet if it subsequently turned out that the security was insufficient, and was so deemed by the proper officers, and a notice and requirement thereupon made for further security, which was not given, upon an application for the bonds as a fund for the bank subsequently made, the right

of retaining the bonds does or does not exist on the part of the State, until full security is given.

S. T. Logan, for the Auditor.

The auditor of public accounts insists that the order of the court below ought to be affirmed, without entering into the question of the obligation of the State to pay the bonds for the benefit of the innocent holders of the circulating notes of the State Bank of Illinois, as the question would have stood before the passage of the act of February 19, 1859. He contends, that by the first section of that act, no room is left for doubt that the legislature intended and enacted that the bonds in the agreement mentioned, were to be sold to pay the circulating notes of the State Bank of Illinois, if the security should be given as provided in said act.

The act is entitled "An Act to indemnify the State of Illinois against loss by reason of unlawful funding of canal indebtedness." Approved February 19, 1859. Public Laws of Illinois, pp. 190, 191.

In the first section it is declared, "That the bonds of the State of Illinois, numbered from 900 to 992, inclusive, and one-half of 993, of Illinois and Michigan canal bonds, and now deposited with the auditor as security for the redemption of the bills or notes, and payment of other liabilities of the State Bank of Illinois, at Shawneetown, shall remain with said auditor; and when the security hereinafter mentioned shall have been given, said bonds shall be held as security for the purposes for which they were deposited with him, and be disposed of by him in the same manner as is now by law provided for the disposition of bonds in similar cases."

It is fully admitted in the agreed case, that the security mentioned in said act has been given.

But it is alleged that the security, in the belief of the governor, auditor and treasurer, has become depreciated, and is now insufficient, of which they have notified Joel A. Matteson, according to said act, and that he has failed to give additional security.

Now, it will be observed by the court, that the condition on

which said bonds were to be "held as security for the purposes for which they were deposited with him, and be disposed of by him (the auditor) in the same manner as is now provided by law for the disposition of bonds in similar cases," is not that the money shall be ultimately paid, or the State indemnified, or the security always remain sufficient, but that the security shall be given; and when once given, as prescribed by the act, the condition is fulfilled, and the direction absolute as to the disposition of the bonds. How they are to be disposed of is prescribed in the general banking laws.

This order is properly taken in pursuance of the fifteenth section of "An Act to amend the general banking law in such manner as to afford greater security to the public." Approved February 14, 1861.

CATON, C. J. This is an application by the auditor, for a mandamus to the treasurer, commanding him to deliver to the auditor ninety-three Illinois and Michigan canal bonds, being numbers nine hundred to nine hundred and ninety-two, inclusive, for the purpose of being disposed of by him, under the banking law for the redemption of the circulation of the State Bank of Illinois. The question presented is, whether these bonds are valid and binding obligations against the State. They were issued by the proper officers of the State, who were authorized by law to issue such bonds for the purpose of taking up canal indebtedness, and were deposited with the auditor, and accepted by him, for the purpose of securing the circulation of this bank, according to the provisions of the banking law. It afterwards turned out, that the canal indebtedness for which these bonds were issued had been paid and taken up by the canal commissioners, notwithstanding which, in some way, this canal indebtedness surreptitiously got into circulation, and was presented for redemption a second time.

It is unnecessary now to decide, whether bonds thus issued and thus deposited for the security of the circulation of the bank, were legally binding upon the State, or not. If they were void before, the State, by the passage of the law of the 19th of February, 1859, assumed their payment and rendered

them obligatory and valid, upon condition that Matteson should give certain securities, which he did give. The first section provides, that these bonds, naming them, shall remain with the auditor, "and when the security hereinafter mentioned shall have been given, said bonds shall be held as security for the purposes for which they were deposited with him, and be disposed of by him in the same manner as is now by law provided for the disposition of bonds in similar cases;" *Provided,* certain specified securities should be given, which should be approved of by the governor, auditor and treasurer. The securities mentioned were given, and approved by those officers.

As the condition expressed in the proviso was complied with, the enacting clause of the statute may be read as if it were a positive enactment, without any provision or condition annexed. It leaves in full force the enacting clause, which provides that the bonds shall be and remain with the auditor, and shall be held as security for the purposes for which they were deposited, and in the same manner as other bonds deposited for the same purpose. Here, then, the State has directed these bonds to be sold in open market, as and for genuine bonds. For that purpose, most undoubtedly, this makes them good and genuine bonds, and waives any objection as to the consideration for which they were originally executed. This distinctly pledges the faith of the State for the ultimate payment of these bonds.

But the treasurer bases his objection, for the purpose of bringing the question before this court, upon the following clause of the same section of the law: "It shall be lawful for the governor, auditor and treasurer, if at any time they shall believe the security to be given has depreciated and that the same has become inadequate, to require of the said Joel A. Matteson to give additional security; and in case the said Matteson shall not give such additional security within sixty days after notice in writing shall have been given him by the governor, auditor and treasurer, so to do, then the sum of money secured to be paid to the State, as aforesaid, shall immediately become and be deemed due and payable from the

time of such default, and the State shall pay no interest upon any of the aforesaid bonds, until otherwise provided by law, but the amount of interest which is retained shall not be required to be paid by said Matteson; and the State shall pay neither interest nor principal hereafter upon any of the last mentioned bonds not on deposit, unless otherwise provided by law." The governor, auditor and treasurer did require additional security, as contemplated by the clause quoted, which requisition was not complied with by Matteson, and the treasurer asks us to determine what effect this has upon the enacting clause of the statute first quoted.

The effect of his failure to give further security, is, first, to make his bond and mortgage due and payable at once, while by its terms it was on five years' time, and also, to suspend the payment of interest on the bonds until authorized by further legislation. These are the consequences flowing from the non-compliance with the requisition by Matteson, and none other. The duty of the auditor to sell these bonds, the same as other genuine bonds, for the redemption of the circulation of the bank, and the pledge of the faith of the State to pay them, remain as provided for in the enacting clause of the statute, except that the interest should not be paid till otherwise provided by law. Even if it should be construed that the faith of the State is not pledged to pass a law authorizing the payment of this interest thus retained, and which Matteson is not required to pay, for the principal, at least, the faith of the State is most solemnly pledged. The bonds mentioned in the conclusion of the section, and quoted above, are other bonds not deposited with the auditor for the redemption of bank circulation.

The judgment of the Circuit Court, awarding the mandamus, is affirmed.

*Judgment affirmed.*