ARTHUR B. BARRETT, Relator, *v.* THE COUNTY COURT OF SCHUYLER COUNTY, Respondent.

1. *County bonds; Schuyler county railroad — Implied consideration — Not subject to equities in the hands of assignees.* — In proceedings for *mandamus* by the purchaser of certain bonds issued by Schuyler County Court to the North Missouri Railroad Company to enforce payment thereof: *held,* that although said bonds did not contain the words "value received, negotiable and payable without defalcation," as provided by the act concerning "bonds, bills, and notes" (R. C. 1855, ch. 21, §§ 2, 3), yet they imported a consideration and possessed the ordinary elements of negotiable instruments; and, in the hands of an innocent holder for value, before maturity, were not subject to

antecedent equities. The act concerning bonds, etc., had in view classes of paper not usually employed in banking and commercial operations, and not adapted or intended for such uses. It was not meant to embrace bonds put in circulation as commercial securities, to be sold and used by a railroad company in defraying expenses of its road.

2. *County railroad bonds — Subscription — Election — Ratification of, defects in.* — In a suit to enforce payment of bonds given by a county to a railroad company, in payment of subscriptions by the county to the stock of the company, although it appear that at the time the court authorized the subscription no election had been held to ascertain the sense of the tax-payers of the county in reference thereto, yet if it appeared that the county, by its duly authorized agent, voted on said stock subscription for more than twelve years, such action of the county was, for the purposes of this suit, a waiver of the defects in the original subscription. Moreover, the issue of the bonds, years after the time of the subscription, was a ratification thereof, and warranted a purchaser of them in assuming that such election, if required by law, had been duly held, and that the condition to the subscription had either been complied with or waived.

## Petition for mandamus.

*Hunton, Moss & Sherzer,* for relator.

I. The bonds sued on are negotiable. (2 Pars. on Bills and Notes, 34 and notes ; Craig v. City of Vicksburg, 31 Miss. 216, 221, 247 ; 1 Wall. 95 ; 2 Wall. 110–122.)

II. Having issued such securities, it is too late now, even as against the railroad company, much more a " *bona fide* holder thereof," for the county to set up any defense based upon conditions precedent to subscription, or conditions in subscription ; and the county, by issue of its bonds, is estopped from denying that power was properly executed. (33 Mo. 440–450 ; 36 Mo. 294 ; 3 Wall. 654 ; 4 Wall 271, 274–5 ; 1 Wall. 83, 175, 291, 384 ; 1 Black, 386 ; 2 Black, 722–731 ; 21 How. 545 ; 43 Penn. St. 401–2 ; 43 Penn. 391.)

III. The act of said county in voting upon said subscription for over twelve years—from 1854 to 1867—is a complete waiver of all conditions. (36 Mo. 294 ; Const. of Mo. ; Gen. Stat. 1865, p. 36, § 3.)

IV. The bonds were due and in hands of *bona fide* holder before any change in "present survey" as understood by the

court—they were due in 1860. If there was an equity against the bonds, it arose after the paper was transferred, and after its maturity.

*J. G. Blair*, for respondent.

I. The bonds are not negotiable under the law in force at their issue. (R. C. 1855, p, 295, § 15 ; *id.* 320, § 2 ; *id.* 322, § 3.)

II. There being no election held, neither the County Court nor their agent had any power or authority in law to make the subscription. (Sess. Acts 1853, p. 135, § 29 ; R. C. 1855, p 427, § 30 ; Leavenworth and Des Moines R.R. Co. v. Platte County, 42 Mo. 171.)

CURRIER, Judge, delivered the opinion of the court.

The agreed statement of facts filed in this cause shows that the county of Schuyler, in the month of December, 1854, or the following January, acting through its duly appointed agent, subscribed for five hundred shares of the capital stock of the North Missouri Railroad Company, amounting to $50,000. This subscription was delivered to the officers of the company, and duly placed on file. It was subject to the following conditions, recited in the order of the County Court authorizing the subscription to be made, to-wit: "Provided said railroad is located on or near the present survey, and in compliance with the present charter, through Schuyler county, as has been surveyed." It further appears that on the 7th day of November, 1859, the Schuyler County Court, as a first payment on the stock thus subscribed, issued and delivered county bonds to the amount of $15,000, which were purchased by the relator before their maturity, as the evidence shows. The bonds were in the following form, sealed and authenticated as the form indicates:

"$1,000.              No. ——              $1,000.

"The County of Schuyler, in the State of Missouri, will pay to the North Missouri Railroad Company, or bearer, at their office in St. Louis, on the first day of March, 1860, one thousand dollars.

" By order of the County Court. Given at Lancaster, this 7th day of November, 1859.

"CHARLES HALE, P. J. S. C. Court.

"Attest: J. B. ALVERSON, Clerk."

[County Court seal.]

These bonds were duly presented for payment at maturity, and payment thereof refused, and no part of them has since been paid. The petition, among other things, recites the foregoing facts, and prays that a peremptory writ of *mandamus* may issue requiring the Schuyler County Court to assess and levy a tax for the payment of said bonds, with the interest thereon. The issue of the writ is resisted on two general grounds, namely: 1st. That the bonds are non-negotiable instruments, and therefore subject to all equities existing between the railroad company and Schuyler county; and, 2d. That the condition upon which the stock subscription was made has not been complied with in two particulars — first, as regards the location of the road, and, secondly, as to the time of its completion to a certain point, as provided in the charter. The first proposition is founded upon the statute in relation to bonds, notes, and accounts. (R. C. 1855, p. 320, §§ 2, 3.) The bonds in suit, it is true, do not contain the words "value received, negotiable and payable without defalcation," and therefore fall within the letter of the provisions referred to; but that they fall within the aim and purpose of these provisions is questionable. In these enactments, the Legislature had in view classes of paper called into use for entirely different objects than that contemplated by the Schuyler county bonds—paper that is not usually employed in banking and commercial operations, and not adapted to or intended for such uses. But these bonds were issued and put in circulation evidently as commercial securities — securities that the railroad company might sell and use in raising funds to defray the cost, in part, of constructing their railroad. They purport, on the face of them, to be issued by the order of the Schuyler County Court, under the common seal, are payable to bearer at a future time, and import a consideration, although that consideration is not

recited in the body of the instrument. Here are the ordinary elements of negotiability. In Moran v. Miami County, 2 Black, 722, the Supreme Court of the United States held that bonds, not essentially unlike those in question, "were commercial securities, though not in the accustomed forms of promissory notes and bills of exchange ; that the parties intended them to be passed from hand to hand to raise money upon, so that the full title was intended to be conferred on any person who became the legal holder of them, and that the original maker had no equity to prevent a recovery." Every circumstance here recited is true of the Schuyler county bonds. (2 Redf. Railw. 604–5.) But it is not deemed necessary to turn the case on this point.

The respondent's second proposition is not available for the purpose of this defense. It is not a defense to be favored. The county, through its court, has issued its unqualified promise to pay whoever might be the legal holder or bearer of the instrument. That instrument was put upon the market, and, while current, has come to the hands of an innocent holder for value ; for the agreed statement concedes that the relator is not to be charged with actual notice of any " conditions, defects, imperfections, or irregularities " connected with the stock subscription or the issue of the bonds. An objection stated in the return to the alternative writ, but not pressed in the argument, is that at the time the court authorized the subscription to the stock of the railroad company, no election had been held to ascertain the sense of the tax-payers of the county ; but it is admitted that the county, by its " duly authorized agent, voted upon said stock subscription at the regular meetings of the railroad company, from the time of its subscription in 1854 to April, 1867," covering a period of more than twelve years. If there were defects in the original subscription, the subsequent action of the county, in representing and voting upon the stock subscribed, must be held, for the purposes of this suit, a waiver of such matters. Besides, the issue of the bonds in 1859 was a ratification of the subscription, and warranted the purchaser of them in assuming that such election, if required by law, had been duly held, and that the condition to the subscription had either been

complied with or waived. (Flagg *et al.* v. Palmyra, 33 Mo. 440.) The decision in this case is an authority fatal to this branch of the defense. And see Hannibal and St. Jo. Railroad v. Marion County, 36 Mo. 294; Knox County v. Aspinwall *et al.*, 21 How. 539; 2 Redf. on Railw. 604, and cases cited. The objection that the railroad was not completed to Schuyler county in the time required by the charter, and that respecting the particular location, fall with the others, and for the same general reasons. But it may be added, in reference to these points, that the bonds became due and payable before the time expired for constructing the road to the given point; and it would be difficult for the court to determine, as a matter of law, or as an inference from other conceded facts, that a point within two and a half miles of Lancaster was not as "near" to that place as the condition to the stock subscription required. The word "near" is a relative term, and its precise import can only be determined by surrounding facts and circumstances. The general location of the road does not appear to have been so changed as to affect the interests of the county at large, although not as desirable for the particular town of Lancaster as a nearer route would have been.

On the whole, the defense to this suit does not appear to have either legal or equitable merits, and the peremptory *mandamus* is therefore awarded. The other judges concur.