## KNAPP vs. GRANT and others.

(1, 2.) CONSTITUTIONAL LAW: *Legislative ratification of unauthorized issue of city bonds.*
(3.) EVIDENCE *of ratification by the city.*

1. Where a city bond was issued without authority of law, merely because the act authorizing its issue had not been published at the time, so as to take effect, the legislature might subsequently, with the consent of the municipal authorities, ratify the issue and give validity to the bond.
2. The provisions of sec. 3, sub-chapter VI, ch. 133, P. & L. Laws of 1857 (charter of Kenosha), as well as the first two sections of ch. 152, P. & L. Laws of 1862, and ch. 407, P. & L. Laws of 1868, *held,* a sufficient legislative ratification of the issue of bonds of said city made in accordance with the terms of ch. 105, P. & L. Laws of 1853, but before it took effect.
3. The fact that the city council (subsequently to such legislative ratification) was proceeding to levy and assess a tax to pay such bonds, and resisted plaintiff's application for an injunction to restrain such tax, *held,* sufficient evidence of a ratification by the city of the issue of the bonds.

APPEAL from the Circuit Court for *Kenosha* County.

An act of the legislature, approved March 22, 1853, and published as ch. 105, P.& L. Laws of 1853, authorized the common council of the city of Kenosha (after an affirmative vote of the electors of said city should first be had, in the manner there prescribed) to issue bonds of the city, to an amount not exceeding $150,000, to the Kenosha and Beloit Railroad Company; and also authorized the levy of a tax, from time to time, to pay the interest on such bonds as it became due. Upon receiving these bonds, the railroad company was required by the act to execute and deliver to the city a mortgage upon its road. The act provided that it should be in force from and after its passage; but by the subsequent decisions of this court it was held to be a general law, which could not take effect, under the constitution of this state, until published. It was not published until October, 1853. On the 1st of July of that year, bonds were issued and delivered to said rail-

road company, in pursuance of the terms of the act. Ch. 479, P. & L. Laws of 1856, provided for the election of a railroad commissioner in said city, and declared that he should "have generally the charge and control of all interest" the city then had or might thereafter have in said Kenosha and Beloit Railroad. The revised charter of Kenosha, published as ch. 133, P. & L. Laws of 1857, contains the following provisions in sec. 3 of sub-chapter VI: "The common council shall have power annually, or more frequently, to levy and collect a tax  *  *  *  to pay the bonded debt of the city, or the interest thereon, and shall have power to issue new bonds, when necessary, to meet such indebtedness," etc., etc.  Said act also contains the following provisions in sec. 3 of sub-chapter XII: "The railroad commissioner shall have generally the charge and control of all interest the city of Kenosha now has or may hereafter have in the Kenosha and Beloit Railroad.  He shall receive all funds paid into the hands of the city treasurer on account of the tax for the benefit of the Kenosha and Beloit Railroad Company, and shall hereafter redeem all scrip which has been issued to said railroad company, as the same becomes due, making such provisions therefor, or recommending such measures to the common council, as he may deem necessary for the protection and benefit of the tax-payers of the city."

Section 1, ch. 152, P. & L. Laws of 1862, provides as follows: "The city of Kenosha is hereby authorized to issue new bonds in exchange for the bonds and scrip heretofore issued by said city, now outstanding and unredeemed,  *  *  for the purpose of compromising the indebtedness of said city on such terms as may be agreed upon between the city and the holders of said bonds."   Ch. 407, P. & L. Laws of 1868, contains a provision of the same character.

*Lewis Knapp,* in behalf of himself and of all other freeholders, citizens and tax-payers of the city of

Kenosha, brought this action against *Levi Grant* and the mayor and aldermen (composing the common council) of said city, to restrain the levy of a tax to pay the interest upon one of the above described bonds, issued in July, 1853, which was held by said *Grant;* and he demanded further that said bond be adjudged void. A demurrer to the complaint as not stating a cause of action, was overruled; and the defendants appealed.

*F. S. Lovell,* for the appellants, argued that, even though the bond was issued before the act authorizing its issue took effect, it was valid, because its issue had been subsequently and repeatedly ratified by the legislature, citing *Mills v. Gleason,* 11 Wis. 470; *City of Kenosha v. Lamson,* 9 Wall. 477; *Campbell v. City of Kenosha,* 5 id. 194.

*A. G. Cole,* for respondent, to the point that the act of 1853 was a *general law,* and not in force until published, cited *Town of Rochester v. Alfred Bank,* 13 Wis. 432; *Berliner v. Waterloo,* 14 id. 378. To the point that there was no valid ratification, he cited *Fisk v. City of Kenosha,* 26 Wis. 21.

DIXON, C. J. This case differs from the case of *Fisk v. Kenosha,* lately decided [26 Wis. 21], in this, that the bond here, for the payment of which the plaintiff seeks to restrain the levy and collection of taxes, was issued under chapter 105, Pr. Laws of 1853, which limited the amount of bonds to be issued under it to a sum not exceeding $150,000. It is not a case, therefore, where the legislature, by reason of its omission to restrict the power of the city in contracting debts, had no power to pass the act in the first instance, and consequently could not ratify it or the proceedings had under it by a subsequent general statute recognizing the validity of all debts contracted under it, without regard to the amount and without its appearing that the legislature knew the amount, which was held insufficient for that purpose in *Fisk v. Kenosha.* The legis-

lative discretion respecting the amount of indebtedness which the city ought to be permitted to incur for the object named, had been exercised here, and that question determined, and the sum fixed in due form under the constitution. The act failed, or rather the valid execution of the bond failed, by reason of a noncompliance, at the time it was issued, with a requirement of the constitution in another particular, which related, not to the action of the legislature itself, which was regular and sufficient, but to the time when such action should become completely efficacious and operative as an expression of the legislative will in proper form. The legislative consent, so far as the legislature itself could act, had been duly given before the bond in question, with others, was issued, but was inoperative at that time because the act had not been published. The substance of the thing required—the actual consent of the legislature—existed; but the form necessary to give it due force and effect under the constitution was absent. It was not a case, therefore, where the legislative consent can be said to have been entirely wanting, and yet it was assumed in *Fisk v. Kenosha* that the legislature might ratify even in a case of that kind, or if that were the only objection. And that is the only question here. It is, whether it was competent for the legislature, with the assent of the proper city authorities, to ratify the execution and delivery of the bond in controversy by subsequent enactment, and whether the legislature has done so. The only objection taken to the validity of the bond, or to the legality of the action of the common council in proceeding to levy and assess the tax to pay it, is, that it was issued before the act was published, which is no more than that previous legislative consent was not duly obtained. This avoided the bond at the option of the city, unless it has since been ratified. The power of the legislature, with the assent of the proper municipal authorities, under such circumstances,

to ratify, is not only conceded in *Fisk v. Kenosha,* but is too well settled by the numerous adjudications of this and other courts to admit of doubt or discussion. If previous legislative consent merely be wanting, that may be supplied by subsequent enactment; and then, if the corporation confirms or treats as valid its former proceedings, they are valid. It was conceded in *Fisk v. Kenosha* also, but for the mistake of the supreme court of the United States, in the case of *Campbell v. the City of Kenosha* there referred to, in supposing that the scrip was or might have been issued under the above act of 1853, or if it had in fact been so issued, that the court was right in holding that the provisions of the revised charter of the city, passed in 1857, were a legislative ratification of the issue of the bonds. And so we think now. We think abundant evidence of such ratification as to the bond in question is found in section 3 of sub-chapter VI of the revised charter. Chap. 133, Private Laws of 1857, p. 296. And if such evidence were not found there, it would still be found in the two first sections of chapters 152, Pr. Laws of 1862, and 407, Pr. Laws of 1868.

And as to evidence of a ratification by the city, the complaint in this action furnishes it. It appears not only that the common council were proceeding to levy and assess a tax to pay the bond, but that they are likewise resisting this action by which an injunction is sought to prevent them.

Such being the only grounds upon which the validity of the bond, or the legality of the tax proceedings, is contested, we must hold that the court below was in error in overruling the demurrer to the complaint, and must reverse the order, and remand the cause for further proceedings according to law.

*By the Court.*—It is so ordered.