EDWARD BELO v. THE COMMISSIONERS of FORSYTHE COUNTY.

*Municipal Bonds -- Conditions Precedent -- Action by Purchaser for Value -- Injunction by Tax Payer -- Retrospective Statute -- Judge's Charge -- Evidence.*

1. Municipal bonds unpaid at maturity are dishonored like other commercial paper, and a purchaser after maturity holds them subject to all defects which would invalidate them in the hands of the original holder.

2. In an action against a municipal corporation upon a bond issued by it, by a purchaser for value without notice, the plaintiff need only show a *power* in the corporate body to issue the bond.

3. If a municipal corporation has the power to issue bonds upon certain conditions precedent, and such bonds are issued, the presumption is that the conditions were complied with and the bonds are *prima facie* valid. The corporation, however, can show the contrary, unless it is *estopped* by its own acts from so doing.

4. When authority to issue municipal bonds upon the performance of certain conditions precedent, is conferred by statute upon a particular tribunal, such tribunal has the sole power to determine the fact whether the conditions have been performed or not.

5. In an action by a *bona fide* purchaser for value against a County upon a bond issued by the former County Court of such County under an Act of the Legislature, the records of such Court are conclusive upon the County. The recitals in the bond are also conclusive upon the County and consitute an estoppel *in pais.*

6. A tax payer, for sufficient cause, can intervene in apt time and enjoin the issuing of municipal bonds, but this must be done before the bonds are issued and negotiated and pass into circulation as commercial securities.

7. It is competent for the Legislature by a retrospective statute to validate an irregular or defective execution of a power by the authorities of a municipal corporation acting under a former statute, where no contract is impaired and the rights of third persons are not injuriously affected.

8. Where the plaintiff testified on the trial below and introduced evidence of good character, and the defendant asked His Honor to charge the jury that they were not bound to believe the plaintiff in passing upon

the issue, which His Honor refused and charged the jury that "they were not bound to believe anybody," and added "that when men, who have proved a good character before the jury, testify, the presumption is that they will not lie, &c." *Held*, not to be error.

(*Chester & Lenoir R. R. Co.* 'v. *Comr's. of Caldwell*, 72 N. C. 486, cited and approved.)

This was an ACTION for a Mandamus, to compel the defendants to provide for the payment of certain bonds alleged to have been issued pursuant to law by the County of Forsythe, tried at Spring Term, 1876, of DAVIDSON Superior Court, before *Cloud, J.*

The action was commenced in Forsythe and removed to Davidson.

The question presented for the decision of this Court is so elaborately discussed by Mr. Justice BYNUM in delivering the opinion, that a statement of the facts is deemed unnecessary.

Upon the issues submitted and under the instructions of His Honor in the Court below, the jury rendered a verdict for the plaintiff. Judgment. Appeal by the defendants.

*Mr. J. M. McCorkle,* for plaintiff.

*Messrs. Dillard & Gilmer, Shipp & Bailey* and *Watson & Glenn,* for defendants.

BYNUM, J. The North Western North Carolina Railroad Company was incorporated by an ordinance of the Convention of 1868, and by Section 12 of the charter, the same power to subscribe to the capital stock of the company and subject to the like regulations and restrictions, is given to Counties and Towns, as was conferred by an Act incorporating the Atlantic & N. C. Railroad Company, passed by the Legislature of 1852. By section 34 of the latter Act, the Justices of the County through or near which the road was

located, "a majority concurring," are authorized to fix upon a subscription sum and submit it to the voters of the County. If the majority favored subscription, the Justices were to choose an agent to subscribe the stock voted and to prepare and issue County bonds, as the Justices should direct. The minutes of the Special Term of the County Court of Forsythe County which ordered the proposition to be submitted to the popular vote, recite that a majority of the Justices were present, concurring in the order. The vote resulted in favor of subscription and was so certified to the succeeding Court, held in June, 1868.

The minutes of that Term recite that 35 Justices were present, which number is admitted to be a majority of the whole number. At this latter Term of the Court, the Justices ordered the subscription to be made to the capital stock of the Company, and the bonds to be prepared and issued and sold by the agent then chosen. The bonds were accordingly put upon the market and among them the identical bonds now sued on were by the agent sold to one Lemly, at his Banking House in Salem, on 5th of March, 1869. These bonds recite that they were "authorized by an ordinance of 1868, by an order of the Court of Pleas and Quarter Sessions of Forsythe County at June Term, 1868, and re-enacted and ratified and confirmed by an Act of the General Assembly, ratified the 11th of August, 1868."

At the same Term at which the subscription was made, the Justices assessed a special tax upon the County to meet the semi-annual interest on the bonds. This Special Railroad Tax was annually assessed, levied and collected and applied in the discharge of the accruing interest upon the bonds from that time until 1872. A certificate for the stock subscribed was issued by the Railroad Company to the County, which it yet holds; an agent was annually chosen to represent and did represent the County stock in all

the meetings of the Company. Under the new State Constitution of 1868, a Board of County Commissioners succeeded to all the powers and duties of the Justices; and up to 1872, this Board unanimously caused the levy and collection of the Railroad Tax and its application to the discharge of the coupons due upon the bonds. But the Board elected in 1872 refused to assess any further tax and to pay any further interest upon the bonds, alleging as the reason therefor, that the subscription of stock so made by the County was illegal and void.

I. The plaintiff purchased the bonds in suit of Lemly, in May, 1873, *after* they fell due. The bonds were then dishonored, like other commercial paper remaining unpaid at maturity, and the plaintiff is a purchaser with notice of all defects which would invalidate them in the hands of Lemly. He acquired no better title than his transferrer. Any defence which could be asserted against the claim of Lemly can be maintained by the County against the plaintiff. 1 Daniel on Negotiable Instruments, § 782; *Arrents* v. *Commonwealth*, 18 Grat. 773 ; 14 Minn. 79. The question then is, were the bonds invalid in the hands of Lemly, who purchased them from the County before maturity. The defence to the action is that the election could be ordered and the subscription of stock made only by the concurrence of a majority of the Justices of the County ; and that in point of fact, no such majority did concur, and therefore the subscription and the bonds issued therefor are void, even in the hands of a *bona fide* holder of the bonds before they fell due. This proposition cannot be maintained. Municipal bonds are negotiable instruments, and the legal rights of the holders of such paper do not so much rest upon abstract propositions, though true, as upon a system of practical rules found by experience to be essential to healthy commercial life. For the public protection and the convenience of trade, every intendment is made in favor of the validity of nego-

tiable instruments. Where bonds have been issued and sold in the market, and have come into the hands of a *bona fide* holder, before maturity, as a general rule such bonds are *prima facie* valid and the *onus* is upon the party impeaching them, to show the contrary. This rule however, which sub-sists between individuals, is much modified in respect to corporate bonds. Such bonds can be issued only in pursu-ance of a special grant of power, and the party claiming the benefit of such bonds must show a *power* in the corporate body to issue them. But if he is a purchaser for value without notice and before maturity, he need do no more. If a municipal corporation has the power to issue bonds only on a compliance with conditions precedent, as for instance, as here, in pursuance of a popular vote and the bonds are issued, the presumption is that the conditions have been ob-served and they are *prima facie* valid, though the defendant may show the contrary unless he is *estopped* by his own acts from doing so. The principle, however, of equitable estop-pel is a most important element in the transaction. For whether conditions precedent have been complied with is a matter of fact to be determined by some tribunal invested with the power and authority to decide it, and the decision when made should be final. It is not disputed that the *power* to make the subscription of stock and issue the bonds was conferred upon the County of Forsythe by the Ordi-nance of the Convention. It is equally clear that the tri-bunal which was authorized to issue the bonds only on com-pliance with conditions precedent, was the sole tribunal to determine the fact whether the conditions had been fulfilled. In our case the Justices of the County, a majority concur-ring, was the Court or tribunal designated to carry the law into effect, and was the tribunal to decide whether the con-ditions had been complied with, and their decision is final in a suit by a *bona fide* holder of the bonds against the muni-cipality. This determination of a question of fact by the

Justices is manifested in two ways ; first, by the records of their Court, and second, by the recitals in the bonds issued by them.   The Justices were authorized by the Act to take the sense of the people, declare the result and issue the bonds.   Their declaration spread upon the Minutes of the Court and made a record, is conclusive against the County in favor of all *bona fide* bondholders without notice.   If they purchased before maturity, they need look no further.   *Marcy* v. *Township of Oswego*, 92 U. S. Rep. 637 ; *Dunning* v. *Houston*, 18 Am. Rep. 253 and note.   If there was fraud in making the record, or irregularities in the election, which would vitiate the bonds, upon exceptions taken in apt time any tax payer of the County could intervene and enjoin their issue.   But this could only have been done before the bonds were issued, negotiated and passed into circulation as commercial securities, with the insignia of validity impressed upon their face. *Chester & Lenoir R. R. Co.* v. *Caldwell Co.*, 72 N. C. 486.   If intentionally or by neglect the tax payers fail to protest, interfere or assert their legal rights ; if they suffer the election to be held, a false result declared, the bonds to be issued and sold, and the proceeds received by their agents ; if for the period of four years they annually submit to a special tax, which is applied in payment of the accruing interest on the bonds ; if they still retain the Railroad stock, without an offer to surrender it and continue to have it represented in the meetings of the Company ; they cannot now disaffirm the acts of their public agents, who issued and negotiated the sale of the bonds. They had the opportunity to intervene and protect themselves before the rights of third persons accrued.   Their acquiescence is a ratification by the principal of the acts of his agent, and according to all the leading authorities upon this question, the doctrine of equitable estoppel is a complete bar and is strictly applied to the enforcement of these

municipal obligations. 2 Daniel on Neg. Instr. § 479; *State v. Vanhorne*, 7 Ohio St. 331 ; *Barrett* v. *County Court*, 44 Mo. 201.

While the decisions are very uniform that the record of the Justices' Court affirming the fact of compliance with the conditions precedent to the subscription of stock, is conclusive and estops the County from denying the validity of the bonds in the hands of a *bona fide* holder before maturity, they are equally uniform in giving the same effect to the *recitals* in the bonds themselves that they had been issued in pursuance of the law which authorized their issue. The recital is a determination of the question and the holder has the right to rely on it. *Town of Coloma* v. *Evans*, 92 U. S. Rep. 484 ; *Lynch* v. *Winnebago*, 16 Wall. 13 ; *Knox County* v. *Aspinwall*, 21 How. 539. In delivering the opinion of the Court in *Coloma* v. *Evans*, Mr. Justice Strong says : "In the leading case of *Knox County* v. *Aspinwall*, the decision was rested upon two grounds. One of them was that the mere issue of the bonds containing a recital that they were issued in pursuance of the Legislative Act was a sufficient basis for the assumption by the purchaser that the conditions on which the County was authorized to issue them, had been complied with, and it was said, the purchaser was not bound to look further for evidence of such compliance, though the recital did not affirm it. This position was supported by reference to the *Royal British Bank* v. *Turquand*, 6 Ellis and Blackburn, 327, a case in the Exchequer Chamber, which fully sustains it and the decision in which was concurred in by all the Judges. This position has been more than once re-affirmed in this Court. It was in *Moran* v. *Miami County*, 2 Black. 732 ; in *Mercer County* v. *Hacket*, 1 Wall. 83 ; in *Supervisors* v. *Schenck*, 5 Wall. 784, and in *Meyer* v. *Muscatine*, 1 Wall. 384. It has never been overruled and whatever

doubts may have been suggested respecting its correctness to the full extent to which it has been some times announced, there should be no doubt of the entire correctness of the other rule asserted in *Knox* v *Aspinwall* That has been so firmly seated in reason and authority that it cannot be shaken." To the same effect is the recent case of *Humbolt Township* v. *Long*, 92 U. S. Rep. 642. See also a valuable summary of the doctrine as established by the decisions of the Supreme Court of the United States, by Judge Dillon, "Law of Municipal Bonds" § 11 ; the result of which is that the recitals in the bonds to that effect, are conclusive of compliance with the conditions precedent and constitute an estoppel *in pais*, upon the municipalities.

Up to this point the discussion has been upon the idea that the bonds were, in fact, irregularly issued and were good only in the hands of a *bona fide* purchaser before maturity and without notice. It may well be doubted whether this is not conceding too much. Suppose the plaintiff had been the original purchaser from the County, after the bonds matured and therefore fixed with notice, and suppose further, that the County in defence could go behind the action of the Justices and the recitals in the bonds, it by no means follows that their invalidity could then be established. ·For the County was clothed with the power to issue them and it is admitted that a majority vote sanctioned the subscription of stock and the issue of the bonds. The real condition precedent was the consent of the tax-payers and that had been thus regularly obtained. The provisions of the Act as to the mode of submitting the question were subordinate and conducive to the main purpose, and may therefore be properly considered as directory only and not of the essence. When the subscription was voted there is authority and reason for asserting that the Justices could have been com-

pelled by process of law, to make the subscription, unless in defence they could have shown that the election was not fairly conducted but was influenced by the fraud of the Railroad Company. *People* v. *Supervisors*, 27 Cal. 655. As the case is presented to us, that question does not arise and we do not decide it.

So far, as to the rights of the parties under the original Act of the Railroad Corporation, granted by the Convention of 1868.

II. But the plaintiff further relies upon a subsequent Act of the Legislature, ratified the 11th of August, 1868, which confirms the original charter of March, 1868. This Act in express terms "ratifies all Acts and things here tofore done under the provisions of said ordinance," and confers upon the "Board of Commissioners of the County, full power and authority to levy from time to time such tax as may be sufficient to pay the subscription made by said County to the capital stock of the North Western North Carolina Railroad Company and any interest due thereon, or to liquidate any debt created by the County in borrowing money to pay such stock subscription."

The competency of the Legislature to enact retrospective statutes, to validate an irregular or defective execution of power by a County corporation, is well settled. In *St. Joseph Township* v. *Rogers*, 16 Wall. 644, the election at which the subscription was approved was held before the law authorizing the subscription, and the Court there decide that this and all defective subscriptions of the kind may be ratified, where the Legislature could have originally conferred the power, and that such laws when they do not impair any contract or injuriously affect the rights of third persons are never objectionable. Dillon's Law of Municipal Bonds, § 21. *Butler* v. *Dubois*, 29 Ill. 105 ; 49 Mo. 225. The ratification operates as a previous authority. 2 Daniel

32

on Neg. Instr. 492; Cooley on Const. Lim. § § 370–381. *Knap* v. *Grant.*, 27 Wis. 147.

Declaring as we do that the ratifying Act of August, 1868, was a curative Act and validated both the County subscrip‐ tion and the issue of the bonds, if any defects existed therein —and it has been one purpose of this opinion to show that the bonds were valid in the hands of *bona fide* holders with‐ out the aid of this healing Act—the proposed evidence of the defendant became immaterial and irrelevant. As a matter of law the bonds were valid and the Court did not err in so declaring.

The only issue submitted to the jury was; " Is the plain‐ tiff the *bona fide* owner and for value of the bonds and coupons mentioned in the pleadings, and was he such at the commencement of the action?" Upon the trial of this issue the plaintiff was introduced and testified as a witness. The defendant requested the Court to charge the jury that they were not bound to believe the plaintiff in passing upon the issue. The Court refused so to charge, but told the jury " they were not bound to believe anybody, and added that when men who have proved a good character before the jury, testify, the presumption is that they will not lie; and that there was evidence before the jury that the plaintiff was a man of good character and no witness had been introduced to assail his character." There was no error in that. With‐ out this reinforcement of a proved good character, men are presumed to tell the truth. The whole theory of jury trials and indeed of all human intercourse is based upon that pre‐ sumption.

His Honor expressed himself with needless emphasis, but we do not see that the jury were misled thereby.

It is estimated that the municipal indebtedness of this country has already reached the enormous sum of $900,000,‐ 000 and is rapidly increasing; nearly the whole of which is evidenced by negotiable securities issued for almost every

conceivable purpose by cities, counties and townships. These bonds represent a large portion of the wealth of the country and whether held for investment or active employment they enter into the complex business of commercial life. This municipal power to issue bonds which is the growth of the last thirty years has already overwhelmed the country with an indebtedness which threatens political society and social order to their foundations. No check against our indebtedness is so effectual as that *you must pay as you go,* but this is utterly disregarded in the legislation which authorizes the issue of bonds payable at a remote future period. As soon as the sting of taxation is felt, the self-burdened people cast about for relief and after some hesitating scruples, plunge into repudiation or other methods involving the sacrifice of public faith, with its dismal train of evils. No refuge for repudiation can be found in the legal tribunals of the country. They have sternly resisted every subterfuge to escape the just obligation of these contracts. No branch of the law has been more thoroughly investigated and discussed, with the view of setting it upon a just and pure foundation. And it is the glory of the law that while by the application of legal principles it enforces the discharge of such obligations, it at the same time preserves the public morals in maintaining the integrity of solemn contracts inviolable. In no other practical way perhaps will the tax-payers be sooner brought to a more vigilant watchfulness over their own affairs, and a more careful selection of their public agents. See Dillon on Municipal Bonds, § 1.

There is no error.

PER CURIAM.                    Judgment affirmed.