Mr. Justice NELSON
delivered the opinion of the court.
This is a writ of error to the Circuit Court of the United States for the district of Indiana.
The suit was brought in the court below against the board of commissioners of Knox county, to recover the amount due upon two nundred and eighty-four coupons, each for the sum of sixty dollars, the whole amounting to the sum of seventeen *541 thousand and forty dollars. The coupons were payable at the North River Bank, in the city of New York — one hundred and forty-two of them on the 1st of March, 1856, and the remaining number on the 1st of March, 1857. These coupons were originally attached to one hundred and forty-two bonds issued by the defendants, for $1,000 each, the bonds payable at the bank above mentioned, twenty-five years from date, to the Ohio and Mississippi Railroad Company, or bearer, with interest at the rate of six per cent, per annum, payable annually on the 1st of March, at the bank, upon presentation and delivery of the proper coupons hereto attached, by the auditor of said county.
The coupons declared upon and sought to be recovered are those which were attached to these one hundred and forty-two bonds, and represented the interest due thereon on the first-of March, 1856 and 1857. The plaintiffs are the holders and owners of these coupons.
The main ground of the defence set up and relied on' to defeat the recovery is, that the defendant, the board of commissioners, possessed no authority to execute, or to authorize to be executed, the bonds or coupons in question; and hence, that they are obligations not binding upon the county of Knox, which this board represents. Our chief inquiry, therefore, will be, whether or not these several obligations were executed and put into circulation, as evidences of indebtedness, by competent and legal authority.
The defendant is a body corporate, under the laws of the State of Indiana, by the name of the board of commissioners of the county, and very large powers are conferred upon it in matters relating to the police and fiscal concerns of the county. The auditor of the county is to act a3 its clerk, and the sheriff is to attend its meetings and execute its orders. It has a common seal, and-copies of its proceedings, sighed and sealed by the clerk, are evidence in courts of justice. It-has power to dispose of the property‘of the county; to adjust accounts against it; to raise revenue*, and examine accounts of disbursing officers ; and an appeal lies from its decisions to the Circuit Court. (1 R. S. of Indiana, pp. 180, 187.)
*542 On the 14th February, 1848, tbe Legislature of Indiana incorporated the Ohio and Mississippi Railroad Company, and by the 12th section of the charter provided ás follows:
“It shall be lawful for the county commissioners of any county in the State of Indiana through which said railroad passes, for and in behalf of said county, to authorize, by order on their records, so much of said stock to be taken in said railroad as they may deem proper, at any time within five years after opening the books of subscription to said stock: Provided, hoioever, That it shall be, and is hereby made, the duty of said county commissioners, in any county through which said railroad may pass in the State of Indiana, to subscribe for stock for and on behalf of. said county, if a majority of the qualified voters of said county, at any annual election, within-five years after said books are opened, shall vote for the same.” (Sess. Laws 1848, page 619.)
This act was amended on the 15t.h January, 1849; and in the second section it was declared to be the duty of the sheriffs of the counties — and, among others, Knox county, the one in question — forthwith to give notice of an election to be held on the first Monday of March then next, to determine whether said county would subscribe for the stock of the Ohio and Mississippi Railroad Company, &c.; and if a majority of the votes shall be given in favor of the subscription, the county board of commissioners shall subscribe to said stock, &c., for the county, to an amount not less than $100,000; Provided, That the county board of any of said counties may, within one week prior to the said election, increase or lessen the amount to be subscribed, of which notice shall be given at the different precincts of said county on the day of the election, &c.
The third section provided that the county subscription shall be payable in county bonds, bearing interest at the rate of six per- cent, per annum, payable annually o.n the first day of March, redeemable at such time and place as the directors «of the company may determine, within thirty years from the date of the subscription. The section then provides for the levying of a tax annually upon the county by the board of commissioners, to meet the accruing interest on the bonds.
*543 The plaintiffs gave in evidence, on the trial, that at a meeting of the board of commissioners of the county of Knox, on,the 26th February, 1849, it ordered, under the power given in the second section above referred to, that the county subscribe $200,000 of the capital stock of the Ohio and Mississippi Railroad Company. And, also, that at a meeting on the 25th October, 1850, after reciting that, in accordance with the wishes of the voters of the county, as expressed- at the election held for that purpose in the several townships on the first Monday of March, 1849, it is ordered that the auditor, in the name and for the county of Knox, subscribe'to the capital stock of the Ohio and Mississippi Railroad Company four thousand shares of fifty dollars each, or the sum of $200,000; and that the auditor be authorized to vote at all elections and meetings of stockholders, or to appoint a proxy in his stead. And that, in pursuance of this direction, the auditor subscribed the four thousand shares, and received certificates in the name of the board of commissioners of the county for the same; and also executed and delivered the bonds of the county, as provided for in the third section of the act of 1849, attaching thereto coupons for the interest. The bonds and coupons in question were issued under this authority.
This is the substance of the case, as presented on the record.
The ground upon • which the want of authority to execute the bonds in question is placed, is the alleged omission to comply with the requisition of the statute of 1849, in respect to the notices to be given of the election to be held on the first Monday of March, at which a vote was to be taken for or against a subscription of stock to the railroad company.
It is insisted that an irregularity or oiúission in these notices had the effect to deprive the board of this authority, or rather furnish evidence that the power had never vested in it under the act; and, further, that the plaintiffs are chargeable with a knowledge of all substantial defects or irregularities in these notices of the election, and not therefore entitled to the character of bona fide holders of the securities.
The act in pursiancc of which the bonds were issued is á public statute of a State, and it is undoubtedly true that any *544 person dealing in them is chargeable with a knowledge of it; and as this board was acting under delegated authority, he must show that the authority has been properly conferred. The court must therefore look into the statute for the purpose of determining this question; and upon looking into it, we seé that full power is conferred upon the board to subscribe for the stock and issue the bonds, when a majority of the voters of the county have determined in favor of the subscription, after due notice of the time and place of the election. The case assumes that the requisite notipes were not given of the election, and hence that' the vote not has been in conformity with the law.
This view would seem to be decisive against the authority on the part of the board to issue .the bonds, were it not for a question that underlies it; and that is, who is to determine whether or not the election has been properly held, and a majority of the votes of the county cast in favor of the subscription ? Is it to be determined by the court, in this collateral way, in every suit upon the bond, or coupon .attached, or by the board of commissioners, as á duty imposed upon it before .making the subscription?
The court is of opinion that the question belonged to this board. The act makes it the duty of the sheriff to give the ■ notices of the election for the day mentioned, and then declares, if a majority of the votes given shall be in favor of the subscription, thé county board shall subscribe the stock. The' right of the board to act in an execution of the authority is . placed upon the fact that a majority of the votes had been cast in favor of the subscription; and to have acted without first ascertaining it, would have been a clear violation of duty; and the ascertainment of the fact was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the. purpose. This board was one, from its organization and general duties, fit and competent to be the depository of the trust thus confided to it. The persons composing it were elected by the county, and it was already invested with the highest functions concerning its general police and fiscal interests.
We do not say that the decision of the board would be conclusive in a direct proceeding to inquire into the facts pre *545 viously to the execution of the power, and before the rights and interests of third parties.had attached; but, after the authority has been executed, the stock subscribed, and the bonds issued, and in the hands of innocent holders, it would be too late, even in a direct proceeding, to call it in question. Much less can it be called in question to the prejudice of a bona fide holder of the bonds in this collateral way.
Another answer to this ground of defence is, that the purchaser of the bonds had a right to assume that the vote of the county, which was made a condition to the grant of the power, had been obtained, from the fact of the subscription, by the board, to the stock of the railroad company, and the issuing of the bonds.
The bonds on their face import a compliance with the law under which they were issued “ This bond,” we quote, '“is ' issued in part payment of a subscription of two hundred thousand dollars, by the said Knox county, to the capital stock, &c., by order of the board of commissioners,” in pursuance of the third section of act, &c., passed by the General Assembly of the State of Indiana, and approved 15th January, 1849.
The purchaser was not bound to look further for evidence of a compliance with the conditions to the grant of the. power. This principle was recently applied in a case in the -Court of Exchequer in England. (6 Ellis & Blackburn, p. 327, The Royal British Bank v. Tarquand.) It was an action upon A bond against the defendant, as the manager of a joint stock company. The defence was a want of power under the deed of settlement or charter to give the bond. One of the clauses • in the charter provided that the directors might borrow money on bonds in such sums as should from time to time by a general resolution of the company be authorized to be borrowed. The resolution passed was considered defectiye. Jervis, Ch. B., in delivering the judgment of the court, observed: “We may now take it for granted that the dealings with these companies are not like dealings with other partnerships, and that the parties- dealing with them are bound to read the statute and the deed of settlement., But they are not bound to do more. And the party here, on reading the deed of settlement, would find, not a prohibition from borrowing, but a permission *546 to do so on certain conditions. Finding that the authority might be made complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which, on the face of the document, appeared to be legitimately done.” (See also 5 Ellis and Bl., p. 245, S. C., and 25 E. L. and Eq., p. 114, Macle v. Sutherland.) The principle we think sound, and is entirely applicable to the question before us.
A question was made upon the argument, that the suit could not be maintained upon the coupons without the production of the bonds to which they had been attached; But the answer is, that these coupons pr warrants, for the interest were drawn and executed in a form and mode for the very purpose of separating them from the bond, and thereby dispensing with the necessity of its production at the time of the accruing of each instalment of interest, and at the same time to furnish complete evidence of the payment of the interest to the makers of the obligation.
■ Some other minor points , were made in the case upon the argument, which we have considered, but which it is not important should be particularly noticed. We are satisfied the judgment below is right, and should be affirmed.