G-holson, J.
An objection to the form in which the denial of an allegation in a pleading is made, ought, properly, to be taken by motion; but as the point has been argued by counsel, it has been considered.
A strong argument may be urged from the adoption in our code of the language of the New York code, and the omission of that part of the latter, which allows an answer to con *188 tain a denial of any knowledge or information sufficient to form a belief. We think we are not required to yield to this argument derived from the history of our code, but are at liberty, in view of the different provisions on the subject, to give it such a construction as will comport with reason and justice.
It will be observed that there are differences between our code and that of New York in other particulars connected with the verification of pleadings. Our code provides that every pleading of fact must be verified; but this verification is sufficient when it shows a belief that the facts stated are true, while the code of New York requires the verification to be to the effect that the pleading “ is true to the knowledge of the person making it, except as to matters stated on information and belief, and as to those matters, he believes it to be true.” Our code contemplates, for the sake of brevity and conciseness, a simple statement of facts, without reference to the manner a knowledge of them, or a reason to believe them, may have been obtained, or may exist; and, it is probable, with this view any reference to knowledge or information was omitted.
It is well known that the rules of pleading in equity recognized those states of the mind as to the truth of any proposition, which reason and experience show have always prevailed. They are expressed by words in common use, assent, dissent, doubt; or, belief, disbelief, unbelief. The last words are sometimes used as synonymous; but unbelief, in the sense of no belief, or a want of belief, is certainly distinguishable from disbelief. That state of mind which did not permit a man to say that he either believed or disbelieved a fact alleged to exist, or to have occurred, was recognized; and, in such a case, he could not be charged without proof. We can not suppose that our code intended to abrogate this well known distinction, and- require a party either to believe or disbelieve an allegation, or, if unable to form a belief, to suf fer the same consequence as if he did believe. Nor do we suppose it was intended to impose upon a person against whom a demand or charge was made, a duty, before unknown *189 to our law, that of active diligence in acquiring knowledge, or obtaining information, which might induce a belief in the correctness of the demand or charge, and thus, by dispensing with further evidence, facilitate its enforcement.
A party is permitted to assert in his pleading those facts only which he believes to exist, or to have occurred; he may deny those which he does not believe. The provisions of our code require a denial of allegations controverted, and make-an affidavit of belief sufficient. The denial and the affidavit, taken together, may be regarded as a statement that the-party does not believe the proposition which he controverts. This, in many cases, he may do without asserting its untruth. And in many cases, as in actions against executors and administrators, and public corporations, whose officers are constantly changing, if it were not permitted, there might be a failure of justice. In accordance with a sense of the justice and propriety of allowing a denial where there is no belief, the practice has arisen of accompanying the denial with the reason why no belief can be formed. That practice has been adopted in this case, and a majority of the court think that such a form of denial may be properly permitted.
It is urged that, though the relator may have no title to the bonds, to enforce the payment of interest on which th'e alternative writ of mandamus has been awarded; yet that is no reason why the proceeding should not progress, so that the duty of payment may be discharged toward those really interested. The objection of a want of interest, it was contended, should have been made when the writ was awarded, and is now too late. In such a case as the present, the real and substantial matter is the right of the relator to demand payment of a sum of money for which he has no other legal remedy. It would be unjust to either party to conclude that matter upon a preliminary showing, or upon a motion to quash, without that trial for which, we think, the provisions-of our law regulating the remedy now provide. .
The defense that neither of the bonds or coupons was delivered to the Dayton and Michigan Railroad Company, cannot be maintained. The fact may be true, and yet be con *190 sistent with the right of the relator. The authority was to issue bonds for the purpose of paying a subscription to the Dayton and Michigan Railroad Company. They might be issued directly to the company, or to a third person, to raise money for the purpose of paying a subscription made. The bonds must have been prepared before an actual issue and negotiation, and the recital should be construed as showing the purpose intended, and is not inconsistent with either of the modes of issue and negotiation to which the authority extended.
The defenses numbered as the 3d and 8th may properly be considered together. They show, in the absence of anything alleged in the writ to limit and restrain their effect, that the issue of the papers purporting to be the bonds of the county of Hancock was illegal, and creates no right to require a tax to be levied upon the people of that county.
The board of commissioners of a county is a quasi corporation, “ a local organization which, for purposes of civil administration* is invested with,a few of the functions characteristic of a corporate existence.” Commissioners of Hamilton County v. Mighels, 7 Ohio St. 109, 115. A grant of powers to such a corporation must be strictly construed. Ib. When acting under a special power, it must act strictly on the conditions under which it is given. The Queen v. Ellis, 6 Q. B. 501, 516; Stricker v. Kelly, 7 Hill, 9-25.
We do not understand these general principles to be controverted, but it is sought to avoid their effect in this case by an estoppel, arising from an acquiescence on the part of the people of the county, according to the principle of the decision in the case of Garrett v. Van Horne, 7 Ohio St. Rep. 327; or, from the action of the commissioners in deciding that the conditions upon which their authority to act depended, had been fulfilled; or, from the effect which the statute gives to bonds regular on their face, as conclusive evidence that the proper preliminary steps to the issue and negotiation of the bonds had been taken.
As to the first ground of estoppel, we do not think that any of the allegations in the writ are intended to present, in *191 advance, a case of acquiescence which would preclude the defense of illegality. Nor do we think it would have been proper so to have framed the writ. When acts of acquiescence are presented by proof to meet the defenses of illegality, it will be proper to decide upon their sufficiency and effect for such a purpose, but not before.
As to the second ground of estoppel, and in support of which the case of Aspinwall v. The Commissioners of Knox County, 21 How. 539, has been cited, it may be observed that -one point of that case is not presented by the pleadings in this case. We have not here, as was presented in that case, a record of the action of the board of commissioners. We need not, therefore, now inquire whether the description of .such a board as given in the opinion in that case, applies in “this State, nor whether it was competent for the board of commissioners of Hancock county, under the special power conferred, to determine, by a finding conclusive in any collateral proceeding, the facts essential to give them any authority to act.
To the mere facts of the putting the bonds in circulation, and the recital in them of the authority under which they were issued, and independent of the provision of the act hereafter to be considered, we are not prepared to give the conclusive effect which is claimed in this case. The decision of the supreme court of the United States must rest on the assumption that it was competent for the commissioners of Knox county, by some act of their own, to make their authority complete, an assumption we are not at liberty to make in this case. This is shown by the case on which that court relies— Royal British Bank v. Tarquand, 6 Ell. & Black. 327 — in which case it is said, that parties dealing with joint stock companies “ are bound to read the statute and the deed of settlement. But they are not bound to do more. And the party here, on reading the deed of settlement, would find, not a prohibition from borrowing, but a permission to do so on certain conditions. Finding that the authority might be mado complete by a resolution, he would have a right to infer the fact of a resolution authorizing that which on the face of the *192 document appears to be legitimately done.” The resolution referred to, the case shows to be a resolution of the company which had been informally and irregularly made. If the authority could not have been made complete by any action of the company with which the party was dealing, but depended upon a condition required by the statute, the decision would have been different. The principle on which the case was decided is shown by the report of it when before the queen’s bench. 5 Ell. & Black. 248. It was a case of irregularity in the proceedings of a company having power to do the act,, and an excess of authority on the part of its directors, which it was held should not affect a third person dealing with the company in good faith. The other case cited in the opinion of the supreme court of the United States — Maclae v. Sutherland, 28 Eng. L. & E. 114 — is there stated to be a case of irregularity in framing a security.
The distinction between such cases and those where an act is illegal, or there is a want of power, is manifest. In the same volume of the reports of the supreme court of the United States, a want of power on the part of a corporation was held to render invalid notes which it had executed, and it was said that “ persons dealing with the managers of a corporation must take notice of the' limitations imposed upon their authority by the act of incorporation.” Pearce v. Madison & Ind. R. R. Co., 21 Howard, 441-443. The principle applies with full force to a board of county commissioners, acting under a special power and in reference to a particular matter.
We have now to inquire whether the defenses of illegality are precluded by the operation of the act, which declares in substance, that bonds issued and negotiated by the commissioners, and regular on the face thereof, in the hands of the company, or of any bona fide holder, shall be deemed conclusive evidence of the .regularity of everything required by this act to be done preliminary to the issuing and negotiation of such bonds. We see no reason to suppose that this provision does not apply to the subscription which the commissioners of Hancock were authorized to make to the Dayton *193 and Michigan Railroad Company. But to avail himself of the estoppel which bonds regular on their face would create, we think the relator must bring himself within the terms of the act.
It would not be proper for us now to say what would be an issue and negotiation of bonds by the commissioners to entitle a party to the effect given to them as evidence by the statute. It will be better to wait until the facts and circumstances under which the commissioners parted with the possession of the bonds, are brought forward in proof, and then determine whether they constitute such an issue and negotiation as the law requires. Such facts and circumstances may be offered in connection with the bonds, to meet the defenses of illegality. We are now asked to preclude those defenses, and statements made in advance for such a purpose' should be distinct and clear.
There is no express averment in the writ that the bonds were issued and negotiated by the commissioners. Such a conclusion could only be arrived at by inferences drawn from a recital in the bond described in the writ, and from the position of the relator as a bona fide holder of the bonds. We are not prepared to say that inferences would supply the requisite averment. But, independent of that consideration, after a careful examination of the statements in the writ, we do not think they can be considered as equivalent to an averment that the bonds were issued and negotiated by the commissioners.
The demurrer to the second part of the answer will be sustained, and overruled as to the first, third and eighth.
Brinkerhoee, C.J., and Scott, Sutliee, and Peck, JJ.t concurred..