HUMBOLDT TOWNSHIP *v.* LONG ET AL.

1. The bonds in question in this suit were issued under the authority of the same act of the legislature as those mentioned in the preceding case. The doctrines there held are reaffirmed.

2. A bond of the tenor following, —

"Be it known that Humboldt Township, in the county of Allen and State of Kansas, is indebted to the Fort Scott and Allen County Railroad Company, or bearer, in the sum of $1,000, lawful money of the United States, with interest at the rate of seven per cent per annum, payable annually on the first days of January in each year, at the banking-house of Gilman, Son, & Co., in the city of New York, on the presentation and surrender of the respective interest-coupons hereto annexed. The principal of this bond shall be due and payable on the thirty-first day of December, A.D. 1901, at the banking-house of Gilman, Son, & Co., in the city of New York. This bond is issued for the purpose of subscribing to the capital stock of the Fort Scott and Allen County Railroad, and for the construction of the same through said township, in pursuance of and in accordance with an act of the legislature of the State of Kansas, entitled 'An Act to enable municipal townships to subscribe for stock in any railroad, and to provide for the payment of the same,' approved Feb. 25, A.D. 1870; and for the payment of said sum of money and accruing interest thereon, in manner aforesaid, upon the performance of the said condition, the faith of the aforesaid Humboldt Township, as also its property, revenue, and resources, is pledged.

'In testimony whereof, this bond has been signed by the chairman of the board of county commissioners of Allen County, Kan., and attested by the county-clerk of said county, this twelfth day of October, 1871.

"Z. WISNER,

"*Chairman County Commissioners.*

"Attest: W. E. WAGGONER, *County-Clerk.*"

— is negotiable, and a *bona fide* holder is entitled to the rights of a holder of negotiable paper taken in the ordinary course of business before maturity.

3. Although the election authorizing the issue of the bonds was held within less

than thirty days after the day of the order calling it, they are not thereby rendered invalid in the hands of a *bona fide* holder for value, who, without any knowledge of the process through which the legislative authority was exercised, relied upon the recitals in them that they had been issued in accordance with law. The recitals are conclusive in a suit brought by him against the township.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

Submitted on printed briefs by *Mr. Wilson Shannon* for the plaintiff in error, and by *Mr. G. C. Clemens, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The first question certified from the court below, is, whether the bonds to which the coupons in suit were attached are negotiable bonds, such as to entitle the plaintiff to the rights of a *bona fide* holder of negotiable paper taken in the ordinary course of business before maturity.

They are certificates of indebtedness to the railroad company, or bearer, each for $1,000, lawful money of the United States, payable on a day certain, with interest at the rate of seven per cent, payable annually on the first days of January in each year, at a specified banking-house, on the presentation and surrender of the respective interest-coupons thereto annexed. If this were all, there could be no doubt of their complete negotiability. But, it is said, the subsequent language of the certificates controls the absolute promise, and shows that payment was to be made only on a contingency. This is argued from the recital contained in the instrument, and from what follows it. We quote: " This bond is issued for the purpose of subscribing to the capital stock of the Fort Scott and Allen County Railroad, and for the construction of the same through the said township, in pursuance of, and in accordance with, an act of the legislature of the State of Kansas, entitled, 'An Act to enable municipal townships to subscribe for stock in any railroad, and to provide for the payment of the same, approved Feb. 25, 1870;' and for the payment of the said sum of money and accruing interest thereon, in manner aforesaid, upon the performance of the said condition, the faith of the aforesaid Humboldt Township, as also its property, revenue,

and resources, is pledged." Relying upon this clause of the certificate, the township contends that the construction of the railroad through the township was a condition upon which the payment was agreed to be made. We think, however, this is not the true construction of the contract. The construction of the road, as well as the subscription for stock, were mentioned in the recital as the reasons why the township entered into the contract, not as conditions upon which its performance was made to depend. It was for the purpose of subscribing, and to aid in the construction of the road, that the bond was given. The words, "upon the performance of the said condition," cannot then refer to any thing mentioned in the recital, for there is no condition there. A much more reasonable construction is, that they refer to a former part of the bond, where the annual interest is stipulated to be payable at a banker's, "on the presentation and surrender of the respective interest-coupons." Such presentation and surrender is the only condition mentioned in the instrument. But that stipulation presents no such contingency as destroys the negotiability of the instrument. It is what is always implied in every promissory note or bill of exchange, — that it is to be presented and surrendered when paid. As well might it be said that a note payable on demand is payable upon a contingency, and therefore non-negotiable, as to affirm that one payable on its presentation and surrender is, for that reason, destitute of negotiability.

The next question certified is, whether the bonds are invalid because of the fact that the election was held within less than thirty days after the day of the order calling for it.

The act of the legislature under which the bonds purport to have been issued (passed in 1870) is the act under which the bonds considered in the case of *Marcy* v. *Township of Oswego*, *supra*, p. 637, were issued. We held in that case, that, by its provisions the board of county commissioners, who caused the bonds to be issued, were constituted the authority to determine whether the conditions of fact, made by the statute precedent to the exercise of the authority granted to execute and issue the bonds, had been performed, and that their recital in the bonds issued by them was conclusive in a suit against the

township brought by a *bona fide* holder.   In so ruling, we but decided what had often before been decided, and what ought to be regarded as a fixed rule.   Applying it to the solution of the question now before us, it is plain that the bonds are not invalid, because all the notice of the popular election was not given which the legislative act directed.   The election was a step in the process of execution of the power granted to issue bonds in payment of a municipal subscription to the stock of a railroad company.   It did not itself confer the power.   Whether that step had been taken or not, and whether the election had been regularly conducted with sufficient notice, and whether the requisite majority of votes had been cast in favor of a subscription, and consequent bond issue, were questions which the law submitted to the board of county commissioners, and which it was necessary for them to answer before they could act.   In the present case, the board passed upon them and issued the bonds, asserting by the recitals that they were issued " in pursuance of and in accordance with the act of the legislature."   Thus the plaintiff below took them, without knowledge of any irregularities in the process through which the legislative authority was exercised, and relying upon the assurance given by the board, that the bonds had been issued in accordance with the law.   In his hands, therefore, they are valid instruments.

The third question certified is answered by what was decided in the case of *Marcy* v. *Township of Oswego, supra*, p. 637, to which we have already referred.   There is no essential difference between this case and that.   The assessment-rolls of the township may have been proper evidence for the consideration of the board of county commissioners, when they were inquiring what the value of the taxable property of the township was; but the bonds are not invalid in the hands of a *bona fide* holder by reason of their having been voted and issued in excess of the statutory limit, as shown by the rolls.   Whatever may be the right of the township as against those who issued the bonds, it cannot set up against a *bona fide* holder of the bonds that the amount issued was too large, in the face of the decision of the board, and their recital that the bonds were issued pursuant to and in accordance with the act of 1870.

*Judgment affirmed.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE DAVIS and MR. JUSTICE FIELD, dissenting.

We have had argued and submitted to us, during the present term, some ten or twelve cases involving the validity of bonds issued in aid of railroads by counties and towns in different States.

They were reserved for decision until a late day in the term; and the opinions having been delivered in all of them within the last few weeks, I have waited for what I have thought proper to say by way of dissent to some of them until the last of these judgments are announced, as they have been to day.

I understand these opinions to hold, that, when the constitution of the State, or an act of its legislature, imperatively forbids these municipalities to issue bonds in aid of railroads or other similar enterprises, all such bonds issued thereafter will be held void. But, if there exists any authority whatever to issue such bonds, no restrictions, limitations, or conditions imposed by the legislature in the exercise of that authority can be made effectual, if they be disregarded by the officers of those corporations.

That such is the necessary consequence of the decision just read, in the cases from the State of Kansas, is too obvious to need argument or illustration. That State had enacted a general law on the subject of subscriptions by counties and towns to aid in the construction of railroads, in which it was declared that no bonds should be issued on which the interest required an annual levy of a tax beyond one per cent of the value of the taxable property of the municipality which issued them.

In the cases under consideration this provision of the statute was wholly disregarded. I am not sure that the relative amount of the bonds, and of the taxable property of the towns, is given in these cases with exactness; but I do know that in some of the cases tried before me last summer in Kansas it was shown that the first and only issue of such bonds exceeded in amount the entire value of the taxable property of the town, as shown by the tax-list of the year preceding the issue.

This court holds that such a showing is no defence to the bonds, notwithstanding the express prohibition of the legislature.

It is therefore clear that, so long as this doctrine is upheld, it is not in the power of the legislature to authorize these corporations to issue bonds under any special circumstances, or with any limitation in the use of the power, which may not be disregarded with impunity.

It may be the wisest policy to prevent the issue of such bonds altogether. But it is not for this court to dictate a policy for the States on that subject.

The result of the decision is a most extraordinary one. It stands alone in the construction of powers specifically granted, whether the source of the power be a State constitution, an act of the legislature, a resolution of a corporate body, or a written authority given by an individual. It establishes that of all the class of agencies, public or private, whether acting as officers whose powers are created by statute or by other corporations or by individuals, and whether the subject-matter relates to duties imposed by the nation, or the State, or by private corporations, or by individuals, on this one class of agents, and in regard to the exercise of this one class of powers alone, must full, absolute, and uncontrollable authority be conferred on them, or none. In reference to municipal bonds alone, the law is, that no authority to issue them can be given which is capable of any effectual condition or limitation as to its exercise.

The power of taxation, which has repeatedly been stated by this court to be the most necessary of all legislative powers, and least capable of restriction, may by positive enactments be limited. If the constitution of a State should declare that no tax shall be levied exceeding a certain per cent of the value of the property taxed, any statute imposing a larger rate would be void as to the excess. If the legislature should say that no municipal corporation should assess a tax beyond a certain per cent, the courts would not hesitate to pronounce a levy in excess of that rate void.

But when the legislature undertakes to limit the power of creating a debt by these corporations, which will require a tax to pay it in excess of that rate of taxation, this court says there is no power to do this effectually. No such principle has ever been applied by this court, or by any other court, to a State, to

the United States, to private corporations, or to individuals.   I challenge the production of a case in which it has been so applied.

In the *Floyd Acceptance Cases*, 7 Wall. 666, in which the Secretary of War had accepted time-drafts drawn on him by a contractor, which, being negotiable, came into the hands of *bona fide* purchasers before due, we held that they were void for want of authority to accept them.   ·And this case has been cited by this court more than once without question.   No one would think for a moment of holding that a power of attorney made by an individual cannot be so limited as to make any one dealing with the agent bound by the limitation, or that the agent's construction of his power bound the principal.   Nor has it ever been contended that an officer of a private corporation can, by exceeding his authority, when that authority is express, is open and notorious, bind the corporation which he professes to represent.

The simplicity of the device by which this doctrine is upheld as to municipal bonds is worthy the admiration of all who wish to profit by the frauds of municipal officers.

It is, that wherever a condition or limitation is imposed upon the power of those officers in issuing bonds, they are the sole and final judges of the extent of those powers.   If they decide to issue them, the law presumes that the conditions on which their powers depended existed, or that the limitation upon the exercise of the power has been complied with; and especially and particularly if they make a *false recital* of the fact on which the power depends in the paper they issue, this false recital has the effect of creating a power which had no existence without it.

This remarkable result is always defended on the ground that the paper is negotiable, and the purchaser is ignorant of the falsehood.   But in the *Floyd Acceptance Cases* this court held, and it was necessary to hold so there, that the inquiry into the authority by which negotiable paper was issued was just the same as if it were not negotiable, and that if no such authority existed it could not be aided by giving the paper that form.   In *County Bond Cases* it seems to be otherwise.

In that case the court held that the party taking such paper

was bound to know the law as it affected the authority of the officer who issued it. In *County Bond Cases*, while this principle of law is not expressly contradicted, it is held that the paper, though issued without authority of law, and in opposition to its express provisions, is still valid.

There is no reason, in the nature of the condition on which the power depends in these cases, why any purchaser should not take notice of its existence before he buys. The bonds in each case were issued at one time, as one act, of one date, and in payment of one subscription. All this was a matter of record in the town where it was done.

So, also, the valuation of all the property of the town for the taxation of the year before the bonds were issued is of record both in that town and in the office of the clerk of the county in which the town is located. A purchaser had but to write to the township-clerk or the county-clerk to know precisely the amount of the issue of bonds and the value of the taxable property within the township. In the matter of a power depending on these facts, in any other class of cases, it would be held that, before buying these bonds, the purchaser must look to those matters on which their validity depended.

They are all public, all open, all accessible, — the statute, the ordinance for their issue, the latest assessment-roll. But in favor of a purchaser of municipal bonds all this is to be disregarded, and a debt contracted without authority, and in violation of express statute, is to be collected out of the property of the helpless man who owns any in that district.

I say helpless advisedly, because these are not *his* agents. They are the officers of the law, appointed or elected without his consent, acting contrary, perhaps, to his wishes.

Surely if the acts of any class of officers should be valid only when done in conformity to law, it is those who manage the affairs of towns, counties, and villages, in creating debts which not they, but the property-owners, must pay.

The original case on which this ruling is based is *Knox County* v. *Aspinwall*, 21 How. 539. It has, I admit, been frequently cited and followed in this court since then, but the reasoning on which it was founded has never been examined or defended until now: it has simply been followed. The case

of the *Town of Coloma* v. *Eaves, supra,* p. 484, is the first attempt
to defend it on principle that has ever been made.   How far it
has been successful I will not undertake to say.   Of one thing
I feel very sure, that if the English judges who decided the
case of *The Royal British Bank* v. *Tarquand,* on the authority
of which *Knox County* v. *Aspinwall* was based, were here to-
day, they would be filled with astonishment at this result of
their decision.

The bank in that case was not a corporation.   It was a joint-
stock company in the nature of a partnership.   The action was
against the manager as such, and the question concerned his
power to borrow money.   This power depended in this partic-
ular case on a resolution of the company.   The charter or deed
of settlement gave the power, and, when it was exercised, the
court held that the lender was not bound to examine the records
of the company to see if the resolution had been legally suf-
ficient.

That was a private partnership.   Its papers and records were
not open to public inspection.   The manager and directors
were not officers of the law, whose powers were defined by
statute, nor was the existence of the condition on which the
power depended to be ascertained by the inspection of public
and official records made and kept by officers of the law for
that very purpose.

In all these material circumstances that case differed widely
from those now before us.

It is easy to say, and looks plausible when said, that if mu-
nicipal corporations put bonds on the market, they must pay
them when they become due.

But it is another thing to say that when an officer created by
the law exceeds the authority conferred upon him, and in open
violation of law issues these bonds, the owner of property
lying within the corporation must pay them, though he had no
part whatever in their issue, and no power to prevent it.

This latter is the true view of the matter.   As the corporation
could only exercise such power as the law conferred, the issu-
ing of the bonds was not the act of the corporation.   It is a false
assumption to say that the corporation put them on the market.

If one of two innocent persons must suffer for the unauthor-

ized act of the township or county officers, it is clear that he who could, before parting with his money, have easily ascertained that they were unauthorized, should lose, rather than the property-holder, who might not know any thing of the matter, or, if he did, had no power to prevent the wrong.