KATZENBERGER and others *v.* CITY OF ABERDEEN.*

*(District Court, N. D. Mississippi, E. D.* April Term, 1883.)

1. POWER OF MUNICIPAL CORPORATIONS TO ISSUE COMMERCIAL SECURITIES.

A municipal corporation has no power to issue commercial securities coupon bonds, payable to bearer, in payments of subscriptions to the capital stock of a railroad company, unless by legislative authority, either express or necessarily implied.

2. CHARTER OF THE CITY OF ABERDEEN—AMENDMENT OF NOVEMBER 15, 1858.

The amendment of November 15, 1858, to the charter of the city of Aberdeen, authorizing a subscription to the capital stock of the New Orleans, Jackson & Great Northern Railroad Company, or any other railroad company, contains no authority, express or implied, to the city council to issue bonds to pay the subscription.

3. CONSTRUCTION OF ENABLING STATUTES.

The history and public policy of the state may be considered in arriving at a proper construction of statutes of this character.

4. CURATIVE ACT OF 1872—ITS EXTENT AND OPERATION.

The construction of the supreme court of Mississippi that the fourth section of the act of 1872, known as the curative act, was intended only to apply to subscriptions made after the adoption of the constitution of 1869, in pursuance of laws enacted under it, is binding upon this court, and will be adopted by it.

At Law.

*Craft & Cooper* and *Calvin Perkins,* for plaintiffs.

*Sykes & Bristow* and *Davis, McFarland & Paine,* for defendant.

HILL, J. Plaintiffs' declaration in this case in substance avers that the defendant is a corporate body created by the laws of the state of Mississippi; that by an act of the legislature of this state, approved November 15, 1858, said corporation was authorized to subscribe and contract with any railroad company for capital stock therein for the use of said city of Aberdeen; that afterwards, under and by authority of the laws of said state, a railroad company was organized by the name of the Memphis, Holly Springs, Okolona & Selma Railroad Company; that afterwards the defendant corporation, by its mayor and selectmen, did subscribe for 1,000 shares, of $100 per share, of the capital stock of said railroad company, and as a part of said subscription, contract, and agreement, did contract and agree to issue to said company in payment of said capital stock its bonds, with interest coupons attached, amounting to $100,000, due and payable 20 years after date; that in pursuance of said contract said subscription was made and said bonds issued, bearing date April 26, 1870, and delivered to said company,—said bonds being made pay-

*Affirmed. See 7 Sup. Ct. Rep. 947.

able to said railroad company or bearer at its office, or their agency in the city of New York, and having attached thereto coupons for interest at 8 per cent. per annum, payable semi-annually. The declaration further avers that said bonds contain on their face the following recitals, viz.:

"This bond is issued in payment of stock of the Memphis, Holly Springs, Okolona & Selma Railroad Company, under and pursuant to the constitution and laws of the state of Mississippi, and the charter of the city of Aberdeen, and the ordinances passed by the mayor and selectmen of the city of Aberdeen on the twenty-sixth day of April, 1870."

Copies of the bonds and interest coupons attached are set out in the declaration, as well as a copy of the ordinance of the mayor and selectmen, authorizing the subscription and issuance of the bonds and coupons. The declaration further avers that in March, 1874, plaintiffs became, and now are, the bearers, owners, and holders for value of 156 of the 200 bonds so issued, amounting to $78,000, with the interest coupons attached, except that the first seven coupons on each had before that time been detached and paid. These are all the recitals that need be made from the declaration to arrive at an understanding of the questions raised by the demurrer. To this declaration the defendant interposes a demurrer setting out eight causes or grounds, but after considering the same with the light given by the exhaustive arguments of the distinguished counsel on both sides, and a thorough review of the authorities produced, I am satisfied that only two of the grounds need be considered, which must be decisive of the case. These are—*First,* was there authority, express or necessarily implied, in the defendant to issue the bonds and the coupons sued upon? and, *second,* if not, has their issuance been since established and confirmed by the legislature, or by the acts of the city through its officers?

That there was no *express* authority to issue the bonds is admitted, and that there has since been no legislative act expressly approving and confirming their issuance is also admitted. The rule is well settled by all the decisions of the United States supreme court from *Knox Co.* v. *Aspinwall,* 21 How. 539, up to the present time, that to render these securities valid there must have been legislative authority, express or necessarily implied, authorizing their issuance. It is, however, equally well settled that the legislature may, by a curative act, remedy irregularities and such other defects as it might have provided for in the original grant of power.

The act of the legislature authorizing the city of Aberdeen to sub-

scribe for capital stock, relied upon as authority for the issuance of the bonds and coupons averred in the declaration, is as follows, viz.:

"That the mayor and selectmen of the city of Aberdeen be, and they are hereby, empowered to contract with the New Orleans, Jackson & Great Northern Railroad Company, or with any other railroad company, and to subscribe, in the name and for the use of the city of Aberdeen, as many shares of the capital stock of said company, and upon such terms and conditions, as they may stipulate and agree upon, not exceeding in amount the sum of one hundred dollars."

The second section of the act provides—

"That the mayor and selectmen of the city of Aberdeen are hereby empowered to levy and collect a tax on all the property within the corporate limits of said city subject at the time to state and county tax, and upon the annual gross incomes of all persons or corporations residing or doing business within the corporate limits of said city, to be applied to the payment of the aforesaid subscription for stock as provided in the first section of this act: provided, that before such tax shall be levied the same shall be approved by a majority of the legal voters of said city, to be ascertained by an election to be held as other elections in said city."

The third section provides for the appointment of a collector and for the machinery for collecting the tax.

It is necessary to ascertain the true intention of the legislature in passing this act, and in order to arrive at a satisfactory conclusion on this point we must look into the history and policy of the state in relation to this subject at the time the act was passed. Before that time, and for a considerable period afterwards,—in fact, not until some time after the late war,—no authority had ever been granted to counties, cities, or towns in this state to issue bonds in payment of subscriptions to capital stock of railroad companies. No such authority was ever claimed, and no such bonds were ever issued. Payment was habitually provided by *taxation*, and such is the provision found in this act. The act further provides that the tax shall not be levied to pay the subscription without the assent thereto of a majority of the qualified voters within the city. The mayor and aldermen were authorized to contract for the subscription for capital stock upon such terms and conditions as might be agreed upon, which it is reasonable to presume was meant to empower the contracting parties to stipulate as to the amount and time of payment, and any other condition as to the location of the road, time for completion, etc., but all with reference to the source and manner of payment provided in the second section of the act. The subscription was but one step in the contract, giving all its terms and conditions to enable the voters

to determine whether they would authorize the levying of the neces-sary tax for its payment. The contract was incomplete, and had no binding force until this assent was given in the mode provided in the act.

Taxation is the only mode provided for the payment of the sub-scription, and excludes the idea of any other mode. The tax-pay-ers, represented by a majority of the qualified voters, by the act had the right, and were given the privilege, of knowing what amount of taxes were to be raised, and when paid, and the subscription, or, rather, the proposed subscription, with all its terms as agreed upon between the corporate authorities and the company, were to be made known to the voters before the vote was taken.

The case of *Wells* v. *Sup'rs Pontotoc Co.*, first decided by this court, and afterwards affirmed by the supreme court of the United States, (102 U. S. 625,) I am satisfied, fully sustains the above positions.

Without further comment on this branch of the inquiry, I am sat-isfied there was no implied or other authority to issue the securities sued upon, which brings us to the consideration of whether or not the issuance of the securities sued on was afterwards approved and rati-fied by the act of 1872, relied upon as a confirmation and ratification of the acts of the municipal authorities in making the subscription and issuing the securities.

The fourth section of this act is as follows:

"That all subscriptions to the capital stock of said Selma, Marion & Mem-phis Railroad Company, made by any county, city, or town in this state, which were not made in violation of the constitution of this state, are hereby legal-ized, ratified, and confirmed."

This act says nothing about the issuance of bonds and coupons. It may be admitted that the name of the Selma, Marion & Memphis Railroad Company is but a change of the name of the Memphis, Holly Springs, Okolona & Selma Railroad Company, and that the intention was to ratify and confirm subscriptions to the capital stock of the last-named company by the name it now bears, and that the effect of the act was to cure any defects in subscriptions to the capi-tal stock of said company. Yet, if I am correct in holding that the subscription as made was unauthorized by law and of no binding force, without the assent of the legal voters of the city for the levy of taxes to pay the subscription, which it is not alleged was given, it remained a nullity and was incurable. The legislature will not be presumed to have intended to *make* a contract for the city of Aber-deen to which it had never been a party. The action of the mayor

and selectmen, being without authority of law, was as though it never had been. But I am relieved from further difficulty on this question by the construction given to this act by the supreme court of the state, found in the opinion of the court in the case of *Sykes* v. *Mayor and Aldermen of Columbus*, 55 Miss. 115.

The construction given by the court in that case is that the legislature only intended by this act to ratify and confirm subscriptions made by counties, cities, and towns to the capital stock of this railroad company, authorized by the act of 1870, when not in conflict with the fourteenth section of article 12 of the constitution of the state; and further, that the legislature could not cure and validate by that act a subscription for stock when the subscription would have been invalid under the provisions of the constitution if then made for the first time.

The numerous authorities referred to by Chief Justice SIMRALL, in his able opinion, fully sustain the conclusions reached in that case; and, whether so or not, it is a construction given by the supreme court of the state upon one of its own statutes, and is binding on this court. Applying this construction of this statute to the bonds and coupons in this case, they derive no benefit whatever from this legislation, and consequently have no validity whatever.

I might refer to the numerous authorities cited and relied upon by counsel on both sides, but it would extend this opinion, already too long, without benefit to any one.

The result is that the demurrer to the declaration must be sustained, with leave to plaintiffs to amend, if they are advised so to do.

Plaintiffs declining to amend, judgment final was rendered for defendant.