## BLAKE v. WALKER.

1. The City Council of Spartanburg, as a municipal corporation, has no powers except such as are conferred by its charter in express terms, or such as are necessary to carry out the powers granted, excepting (if, indeed, it be an exception) the inherent power in all elective bodies of judging of the qualification and election of their members.

2. Under the local option law (*Gen. Stat.*, § 1753), all elections are to be conducted according to the law governing municipal elections in the town or city where held; and under the charter of the city of Spartanburg (17 *Stat.*, 435, § 5), the managers are to count the votes and declare the election, such managers to be appointed by the council "to conduct the election." Therefore, the declaration by the managers of the result of a local option election could not be reviewed by the City Council.

3. The act of 1868 (14 *Stat.*, 108), authorizing an ultimate decision of municipal elections by boards of aldermen, cannot apply here, as there was no contest before the managers; and that act having been dropped from the General Statutes of 1872, is not now law.

4. The council here were required to act upon the declaration of the result by the managers, and not upon the determination by the council of how the majority voted.

5. The conduct of an election does not literally include a declaration of the result, but the word "conducted" in the local option law had a wider meaning, and in its application to the city of Spartanburg was intended to embrace also a declaration of the result.

Before WALLACE, J., Spartanburg, December, 1884.

The appeal in this case was from the following interlocutory order of injunction:

The complaint in this action alleges, in substance, that under an act approved February 9, 1882, and entitled "An act to provide a local option law for the incorporated cities, towns, and villages of this State," a number of citizens of the city of Spartanburg, equal to one-third of the number of votes cast in the next preceding municipal election in that city, signed a petition and delivered it to the City Council, in which they asked that the question of "license" or "no license" should be submitted to an election by the voters of the city. In accordance with the prayer

of the petition, the election was ordered to be held on November 29, ensuing, and three managers were appointed by the City Council to conduct it. The election was held at the time appointed, and upon the closing of the polls the managers proceeded immediately to count the votes. They found in the ballot-box and counted 336 for "no license" and 334 for "license," and declared the election in favor of "no license" accordingly. They notified the mayor of this result and adjourned.

The complaint further alleges that notwithstanding these facts, the mayor and aldermen proceeded on December 5, next, after November 29, 1884, on which day the said election was held, to pass an ordinance for issuing licenses for the sale of spirituous and malt liquors for the year 1885, and that under said ordinance did issue licenses to several persons to sell liquor in the city. The object of the complaint is to obtain a judgment of the court, that the City Council be enjoined from granting further licenses, and that the persons to whom licenses have been granted be restrained from selling liquor under them.

A motion was made by plaintiffs' counsel for an order requiring the defendants to show cause why they should not be enjoined from proceeding to grant licenses under the ordinance above referred to. The motion was granted, and the defendants made return on the day fixed in the order, viz., December 29, last past. They say in substance, that after the election ordered by them on the question of "license" or "no license" had been held, and the result had been certified to them by the managers, a petition signed by certain electors of the city and sworn to was presented to the council, in which it was alleged that at the said election certain persons named in the petition, who were not qualified voters of the city, had been allowed to vote; and, therefore, the petitioners prayed that the City Council would investigate the election. In pursuance of the prayer of this petition, the council heard evidence touching the allegations contained in the paper, and after full hearing adjudged and determined that a majority of the voters of the city had voted in favor of "license." That the City Council then passed the ordinance providing for granting licenses, and did grant licenses to sell liquor to their co-defendants herein. The return of the defendants other than the City Coun-

cil rest, in their return, upon essentially the same grounds as the City Council.

. It appears from the foregoing statement that the plaintiffs claim that the declaration by the managers of the election was final, and bound the City Council; and that the defendants claim that the City Council had the legal right to investigate the election, and thus ascertain the true result and declare it as they found the facts to be. Thus the leading question in the case is evolved. .Was the declaration of the election by the managers final and conclusive? or did the City Council have the legal right to investigate the election and declare a different result from that declared by the managers?

I do not desire to go into an exhaustive discussion of the interesting issues, obvious upon the face of the pleadings, upon this preliminary motion. To entitle the plaintiffs to the relief sought now, in advance of a trial upon the merits, a *prima facie* case need only appear. To this end a brief examination of the law governing municipal elections in the city of Spartanburg is indispensable. Section 8 of the act under which the election was held, which act is known as the local option law, and to be found in 17 *Stat.*, 895, is as follows: "All elections under this act shall be conducted according to the laws now governing the municipal elections of the city, town, or village in which they are held." This language suggests that the laws governing municipal elections of the different municipalities of the State may not be the same, and a slight examination will show this to be the fact, the difference, however, consisting in matters of detail.

It is important here, therefore, to ascertain the laws governing elections of the city of Spartanburg. The charter of the city, approved December 24, 1880, provides for the elections with much detail and particularity, so much so as to induce the belief that the charter was intended to cover the whole subject. It provides the time of holding the elections, for the registration of voters, the disposition of the registration lists, the qualifications of voters, the administration of oaths, the counting of the votes, the declaration of the election, the notice of the result to the mayor, and the notification by him to the persons elected. Section 5 of the said charter is in the following words: "The said

election shall be held in some convenient place in said city, from 8 o'clock in the morning until 4 o'clock in the afternoon, and when the polls shall be closed the managers shall forthwith proceed to count the votes and declare the election, and give notice in writing to the mayor then being, who shall, within two days thereafter, give notice, or cause the same to be given, to the persons elected," &c. Section 6 of the same charter provides "that in case a vacancy shall occur in the office of mayor or alderman by death, resignation, or otherwise, an election shall be held to fill such vacancy by order of the mayor and aldermen," &c.

It will be observed that by the 5th section quoted above the duty is imposed upon the managers to count the votes and declare the election, and give notice in writing to the mayor, who, within two days, must give notice to the persons elected; the obvious construction of this language is that the managers are not only to conduct the election, but also declare the election and announce the choice of the electors. They are then required to communicate this fact officially, not to the City Council, but to the mayor; and the mayor is required, not to investigate the election, but to inform the persons elected of their election; no duty in this connection is imposed upon the City Council, and upon the mayor is imposed only the purely ministerial duty of informing the persons chosen. It is therefore plain that no power to investigate the election is granted to the City Council by the city charter.

It is argued, however, that the power of the City Council to investigate any municipal election is supported by section 5 of "an act to provide for the election of the officers of the incorporated cities and towns in the State of South Carolina," ratified September 25, 1868 (14 *Stat.*, 108). That act affords upon its face very strong evidence, when taken in connection with the condition of civil affairs of the State at the time of its enactment, which is matter of history, that it was intended to meet an existing exigency and then expire, and that its object has been accomplished long ago. It was re-enacted in 1872 in the general statutes, probably because some of the officers elected under it were still in office, and to repeal it then would perhaps have destroyed their tenure. The section of that act relied on, or as much of it as is material to the issue here, is as follows: After providing for

the counting of the votes by the managers, and the communication of the result to the mayor, etc., "the managers of election shall decide contested cases, subject to the ultimate decision of the board of aldermen or wardens, when organized, except when the election of a majority of the persons voted for are contested, or the managers charged with illegal conduct, in which case the returns, together with the ballots, shall be examined and the case investigated by the acting board of aldermen, who shall declare the election, and their decision shall be binding upon all parties."

In elections held under this act, the managers heard contests in the first instance, and the newly elected board of aldermen could hear appeals from their judgment; or if the election of a majority of the persons voted for or the managers were charged with illegal conduct, the existing board of aldermen were invested with power to hear and determine originally. None of these conditions exist in the present case. There has been no hearing of a contest by the managers and an appeal to the council. A majority of the persons voted for have not had their election contested, nor are the managers charged with illegal conduct, but only the named voters. The conditions which this act made necessary to give the City Council the power to investigate the election not existing, there is nothing left upon which to raise the power.

As has already been stated, this act of 1868 was re-enacted in 1872 in the General Statutes. The act is found entire in the General Statutes of 1872, beginning at page 39, except the paragraph quoted above from section 5, which is entirely omitted. That the omission was intentional can be collected from the fact that the act itself was only provisional, and that no more elections were to be held under it, and the body of the act was preserved only to support the tenure of those officers who had been elected under it. In addition to this, the Supreme Court, in the case of *State* v. *Acting Board of Aldermen of Charleston* (1 *S. C.*, 40), had held that the acting board of aldermen, under that clause, had no power of judicially deciding an election, but could only declare the result; and it had been held long ago in this State, first in *Johnston* v. *Charleston* (1 *Bay.*, 436), and afterwards in *State* v. *Schnierle* (5 *Rich.*, 301), that all elective

bodies, including elective municipal bodies, had an absolute right to decide upon the election of their own members. So that it was useless to give to the new board, when organized, an appellate jurisdiction from the judgment of the managers in a matter in which they already had an absolute conclusive original jurisdiction. The reason of the omission is therefore obvious.

The act, then, of 1872, without this clause under consideration, taken in connection with the law upon the subject as declared by the courts in the cases last above referred to, covered the whole ground of the original act of 1868, and was manifestly intended to embrace the whole subject-matter of that act, and that act is thereby repealed in all its parts. *Sedg. Stat. Law*, 104, 105. If it should be insisted that the re-enacted statute of 1872 has still any vitality, the charter of the city of Spartanburg having exhaustively covered the same ground in regard to elections with that statute, it is clear that the provisions of the charter were intended to repeal, and under the principles just above referred to did repeal, that act as to the city of Spartanburg.

It thus appears that the only law applicable to elections in the city of Spartanburg is the charter of that city, except the decisions in *Johnston* v. *Charleston* and *State* v. *Schnierle, supra.* A municipal corporation is a creature of statute. All its powers are derivative. It has no power unless expressly granted by the legislature of the State, or implied, because necessary to carry expressly granted powers into effect. The charter of the city of Spartanburg, as has been already seen, imposes no duty upon the City Council in connection with the declaration of an election, and imposes only a slight ministerial duty—that of notifying the persons elected—upon the mayor; and this charter, as we have seen, is the only statute applicable to the matter. This would be sufficiently decisive of the matter for the purposes of this motion but for the two cases above referred to as deciding that an elective municipal body has an inherent power to decide upon the election of its own members. Our courts have gone no further than this, and the cases rest upon a principle that will not support the doctrine that, because they can judge of the elections of their own members, they can judge of all municipal elections.

I think, therefore, that it is not necessary to extend this discussion further upon this motion, and that it sufficiently appears that there is enough in the plaintiffs' case to justify a continuance of the injunction until the case can be heard upon its merits.

It is ordered, that the defendants, the mayor and aldermen of the city of Spartanburg, be restrained and enjoined from issuing or granting, in any form, to any one, license or licenses to sell any kind of liquor, spirituous or malt, in the city of Spartanburg, and that the persons named in the complaint in this action as having obtained licenses to sell malt and spirituous liquors from said city council be restrained and enjoined from selling such liquors, upon the plaintiffs entering into a sufficient bond, to be approved by the clerk of the court, in the sum of five hundred dollars, conditioned to pay such damages as may be sustained by reason of this injunction. It is further ordered, that this order remain of force until the further order of this court.

From this order defendants appealed upon exceptions which made the points considered by this court.

*Messrs. D. Johnson, Jr.,* and *R. W. Shand,* for appellants.

*Messrs. C. P. Sanders, Bomar & Simpson, J. S. R. Thomson,* and *E. H. Bobo,* contra.

October 27, 1885. The opinion of the court was delivered by

Mr. JUSTICE McIVER. [Omitting the statement which appears in the order of the court below.]

The conclusion reached by the Circuit Judge is so fully vindicated by his clear and conclusive reasoning that it is scarcely necessary for us to add anything to what he has so well said. The City Council of Spartanburg, as a municipal corporation, has no powers except such as are conferred by its charter in express terms, or such as are necessary to carry out the powers granted. The only exception to this, if indeed it be an exception, is the inherent power, in all elective bodies, of judging of the qualifications and elections of their members, as held in *Johnston* v. *The Corporation of Charleston,* 1 *Bay,* 436, and

*State* v. *Schnierle*, 5 *Rich.*, 299.    But this exception manifestly
does not cover the present case, for here there is no question
either as to the qualification or election of any member of the
City Council of Spartanburg.

The question here arises under the terms of the act commonly
called the local option law, above referred to, and must be deter-
mined by the provisions of that act.    By one of the provisions of
that law (*Gen. Stat.*, § 1753) "all elections under this chapter
shall be conducted according to the laws now governing the muni-
cipal elections of the city, town, or village in which they are
held."    Hence to determine the mode of conducting the election
which is here in question, we must first ascertain what was the
law governing municipal elections in the city of Spartanburg at
the time this election was held.    That law is to be found in the
charter of the city (17 *Stat.*, 434).    The fifth section of that act
provides "the said election shall be held at some convenient place
or places in said city, from 8 o'clock in the morning until 4
o'clock in the afternoon ; and when the polls shall be closed, the
managers shall forthwith proceed to count the votes and declare
the election, and give notice in writing to the mayor then being,"
&c.; and in the last sentence of this section the following lan-
guage occurs: "The mayor and aldermen for the time being shall
appoint one or more boards of managers, three managers for each
board, to conduct the election," &c.

There is no provision in this act, or in any other that we are
aware of, which authorizes the City Council to review the action of
the managers.    It is true that there was a provision in the act of
1868 (14 *Stat.*, 106) providing for the election of the officers of
incorporated cities and towns in this State by which the decision
of the managers was subject to the *ultimate* decision of the
boards of aldermen or the wardens when organized, except in
certain cases which need not be specified here; but as shown by
the Circuit Judge, this provision was dropped when the act was
incorporated in the General Statutes of 1872, and cannot now be
regarded as law; and even if it can be so regarded, yet it would
not help the appellants here, for there is no pretence that there
was any contest of this election before the managers, and hence
there was no case for the *ultimate* decision of the City Council.

It is contended, however, and this seems to be the main point upon which the appellants rely, that the local option law only provides that the election shall be *conducted* according to the law governing a municipal election in the town or city where such election is held, and that this does not include a determination of the result of the election, which must be done by some other authority than that of the managers; and, inasmuch as the act does not in terms confer this authority upon any one, it must necessarily be exercised by the city council, as their action, in granting or refusing licenses, depends upon the result of the election. It may be very true that when the city council, or a board of county commissioners, is authorized to grant licenses or subscribe for the stock of a railroad upon certain conditions, as, for example, upon condition that a majority of the citizens of the city or county shall vote for such license, or in favor of such subscriptions, it is necessarily implied that the city council, or the board of county commissioners, as the case may be, are authorized to determine whether the required conditions have been complied with, where no other mode of ascertaining whether the required conditions have been complied with has been provided, as is held in *The State* v. *Columbia*, 17 *S. C.*, 84, and *The Board of Commissioners of Knox County* v. *Aspinwall*, 21 *How.*, 539. But where the act does provide another mode of determining whether the conditions have been complied with, as, for example, the result of the election, then this principle does not apply, and the result must be determined in the mode prescribed by the act.

The practical inquiry, therefore, is whether the local option law does provide a mode of ascertaining the result of the election. We think that the act, properly construed, does provide that the managers shall declare the result of the election, and, therefore, that the City Council of Spartanburg had no authority to recanvass the votes and declare the result. It is true that the act does provide that the election should be *conducted* according to the law governing municipal elections in the city of Spartanburg, and it may be true that, according to a strict and literal construction of the word "conducted," it would not embrace a declaration of the result; but if there is anything else in the act

tending to show that the legislature did not intend to use this word in its limited sense, then it is the duty of the court to give effect to such intention.

Now, it seems to us clear that the legislature intended to apply the same law regulating the municipal election to the election provided for in the local option act, and that this act must be read as if the provisions of the fifth section of the charter of the city of Spartanburg had been incorporated into it. So reading. it, we think it manifest that the legislature did not intend to use the word "conducted" in its strict and limited sense, but intended it also to embrace the declaration of the result. As we have seen, the fifth section of the charter of the city expressly provides that "when the polls shall be closed, the managers shall forthwith proceed to count the votes *and declare the election*, and give notice in writing to the mayor"; and in the latter part of the same section it provides: "The mayor and aldermen for the time being shall appoint one or more boards of managers, three managers to each board, to *conduct* the election," showing plainly that the word "conduct" was not there used in its limited sense, but was intended to embrace also the declaration of the result; the duties of the managers are first prescribed, amongst which is the duty to *declare the result of the election*, and then the persons appointed to perform these duties are spoken of as persons appointed *to conduct* the election.

The judgment of this court is that the order appealed from be affirmed.