FIRST NAT. BANK OF MT. VERNON, WASH., v. NATIONAL PARK BANK OF NEW YORK.

(Circuit Court, S. D. New York. January 26, 1910.)

BANKS AND BANKING (§ 106*)—REPRESENTATION OF BANK BY OFFICERS—SPECIAL AUTHORITY TO DRAW CHECKS.

A resolution of the directors. authorizing the president of a bank to draw checks and drafts, containing no limitation on its face, *held* to justify the payment by. a depository of funds of the bank of a check drawn by such president against such deposit.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 106.*]

At Law. Action by the First National Bank of Mt. Vernon, Wash., against the National Park Bank of New York. On motion by defendant for direction of verdict. Motion granted.

Hardin & Hess, for plaintiff.
Louis F. Doyle, for defendant.

HAND, District Judge. The plaintiff pleads the deposit of the money; the defendant, that it paid the sum deposited on the plaintiff's order. Therefore the defendant has the burden. To support it the defendant relies upon the resolution which verbally meets the conditions. In reply the plaintiff insists, first, that the resolution means no more than that Lyon should have the power to sign a check in the execution of some power which he had virtute officii, or in the execution of a special authority; second, that the only power which he had virtute officii was to pay out deposits; third, that it was obvious, from the place where the draft was drawn, that it could not have been in execution of his only implied power. If any of these three links fails, the defendant must succeed.

While the cases are by no means uniform, there is some very respectable authority for the° proposition that a bank president has at least an implied power to initiate litigation and employ counsel. If so, it needs no argument to show that this power might have been exercised in Oklahoma, and that the execution of the draft at that place was not notice of the fact that Lyon was acting without the scope of his authority.

I do not rest my decision upon this ground, because the resolution has a broader meaning than the plaintiff allows. His theory is that the power conferred must be interpreted as incidental only to the

---

customary powers of the president or to powers specially bestowed. The trouble is that without the resolution the president had no powers involving the disbursements of the bank's moneys, unless it be the power to conduct litigation. There were, therefore, no implied powers to which the right to draw checks could have been incidental, and the resolution must either mean that he was to draw whenever specially authorized, or it must have been meant to confer the general power to draw funds, just as though an individual had appointed him an attorney in fact for that purpose.

There remains, therefore, the interpretation that the power was to be exercised only in execution of some special authority. This is equivalent to saying that it was subject to limitations which were not apparent upon the face. I can only say that, if it was, innocent persons were not responsible for the existence of the facts upon which the power depended. Commissioners of Knox County v. Aspinwall, 21 How. 539, 16 L. Ed. 208; Royal British Bank v. Tarquand, 6 E. & B. 327; Bird v. Daggett, 97 Mass. 494; North River Bank v. Aymar, 3 Hill (N. Y.) 262; Bank of Batavia v. N. Y., L. E. & W. R. R. Co., 106 N. Y. 195, 12 N. E. 433, 60 Am. Rep. 440.

Here the act corresponded literally with the wording of the power, according to the rule of Lord Ellenborough in Pickering v. Busk, 15 East, 38; and, as the plaintiff gave no indication in the resolution of any limitations, it makes no difference whether or not the resolution be impliedly subject to any. If it was, third persons were not obliged to look aliunde. The case is, therefore, quite different from a customary power, like that of a cahier, which depends for its extent upon usage, and which is limited by its own previous exercise. Third persons may take the express words of any power in any reasonable sense they will bear; they will not be limited unless the parties clearly so meant. While, therefore, there is, of course, no theoretical distinction between express and implied powers, at least by the better theory, there is practically an important difference when the words used are of general application.

In corroboration of my conclusion, the other words of the resolution are worth notice. Lyon was authorized, not only to make all checks and drafts, but "all contracts." In answer to the contention, in that the resolution intended no more than to give Lyon a power to be exercised only when specially authorized, these words show that it could not have been so, because the president is in any case the proper person to sign contracts which are specially authorized. The resolution must have meant more than this; it must have meant to confer upon him some self-subsisting authority. I think it meant to give him general authority to sign contracts and checks. If so, he acted within the scope of his authority.

I direct a verdict for the defendant.